FEDERAL DEPOSIT INSURANCE COR-
PORATION, Plaintiff-Appellee,

v.

MARINE NATIONAL BANK OF JACK-
SONVILLE et al., Defendants·
Appellants.

No. 29518

Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Aug. 13, 1970.

Rehearing Denied Oct. 28, 1970.

---

19.

See also D.C., 303 F.Supp. 401.

Clyde N. Wells, Jr., Jacksonville, Fla., for appellants.

Clyde A. Reese, Jr., Jacksonville, Fla., for appellee; Rogers, Towers, Bailey, Jones & Gay, Jacksonville, Fla., of counsel.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

On May 27, 1968 Marine National Bank of Jacksonville commenced business. It took over the premises and many of the officers and employees of Central National Bank, whose acceptable assets it had purchased. Previously the Comptroller of the Currency had determined that an emergency existed with regard to Central's affairs, and for almost a month representatives of the Federal Deposit Insurance Corporation had been on Central's premises investigating it and determining its assets and liabilities.

On May 29, two days after it opened, Marine erroneously paid an improperly indorsed draft causing the loss to FDIC which is the subject of this suit.

The loss occurred in this way. Vinson Forrester had entered into a purchase contract with Southern Steel Construction Company, Inc. Southern Steel had executed a promissory note payable to Central and assigned as collateral its right to payment under the Forrester contract. Forrester defaulted on the contract with Southern Steel. On May 29 his surety issued a draft payable to the order of "Southern Steel, Inc. and Central National Bank" and delivered it to an officer of Southern Steel. The same day Southern Steel indorsed the draft and deposited it in its account at Marine. Meanwhile, on May 27, Central had negotiated to FDIC the Southern Steel note and assigned to FDIC the collateral therefor.[1]

Notwithstanding the absence of an indorsement by Central,[2] Marine took the draft for deposit, gave Southern Steel provisional credit for the amount thereof, and transmitted the instrument through banking channels to the Atlantic National Bank of Jacksonville. Atlantic National remitted the proceeds of the draft to Marine. Southern Steel's provisional credit became final, and Marine allowed Southern Steel to withdraw the proceeds from its account during a period of approximately two weeks after the deposit.

Southern Steel did not pay the note assigned to FDIC and became insolvent. Some months after the events

---

1. While the parties do not say, we assume that the Southern Steel note was not of sufficient quality to be taken over by Marine, and was transferred to FDIC in its capacity as liquidator of Central's affairs.

2. Or by FDIC as assignee of Central. Marine asserts that on May 29 it had no notice of the assignment. But the assignment to FDIC conveyed all of Central's rights to the draft to FDIC and notice to Marine was unnecessary to perfect FDIC's proprietary right to the note. That Marine was unaware of the true owner of the converted draft does not excuse its conversion, even though its ignorance was in good faith. Cf. National Atlas Elevator Co. v. United States, 97 F.2d 940 (8th Cir. 1938); Birmingham Loan Co. v. Klinner, 39 Ala.App. 125, 95 So.2d 402 (1957).

of May, FDIC learned of the existence and disposition of the draft, and brought this action for the conversion thereof. The District Court granted summary judgment for FDIC. We affirm.[3]

At the threshold, it should be noted that Marine does not dispute that a draft may be the subject of conversion.

Under the Uniform Commercial Code, "[a]n instrument payable to the order of two or more persons: * * (2) if not in the alternative is payable to all of them and may be negotiated, discharged or enforced only by all of them." F.S.A. § 673.3–116. When Southern Steel deposited the draft with Marine, no negotiation under F.S.A. § 673.3–202(1) occurred because there was lacking the necessary indorsement of Central, the other payee. For the same reason, Marine could not become a "holder" as defined in F.S.A. § 671.1–201(20), and so could not become a holder in due course under F.S.A. § 673.3–302(1). Florida has long recognized that a bank which wrongfully appropriates commercial paper may be liable for conversion. See Louisville & N. R. Co. v. Citizens' and Peoples' Nat. Bank, 74 Fla. 385, 77 So. 104 (1917). Marine's disposal of the draft amounted to a conversion. The situation is analogous to payment on a forged indorsement, which the Code acknowledges to be a conversion. F.S.A. § 673.3–419(1) (c).

Marine, while recognizing that a right of action exists for conversion of a draft contends that the pleadings and affidavits revealed the existence of meritorious defenses which required a trial: (1) no conversion because the draft had no value until accepted and therefore could not be the subject of conversion; (2) no conversion because Marine as representative was not liable to the true owner of the draft except to the extent of having to return to the owner the instrument or any proceeds thereof remaining in its hands; (3) contributory negligence of FDIC; and (4) negligence of FDIC.

The first defense is without merit. F.S.A. § 673.3–419(1) (a) recognizes that a drawee who refuses to accept a draft presented for acceptance and refuses to return it on demand is liable as a converter for the face amount of the draft. Liability in conversion thus does not require an acceptance of the instrument prior to the appropriation thereof.

The second defense is based on F.S.A. § 673.3–419(3) which provides:

Subject to the provisions of this code concerning restrictive indorsements a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands.

The deposition of Marine's Assistant Cashier presented to the District Court admitted that the bank had failed to comply with its own commercial standards in dealing with the instrument without obtaining the indorsement of Central.[4] No material issue of fact was presented with regard to this issue.

Contributory negligence is not available as a defense in an action sounding in trover and conversion. For contributory negligence to be a defense, the action must be one based on negligence. Restatement Second, Torts § 463 (1965); Cooley, Torts § 127 at 262 (Throckmorton ed. 1930). The action of trover and conversion is one to recover

---

3. Pursuant to our local Rule 18, this case is decided without oral argument.

4. Indeed, the court may take judicial notice of the fact that banks do not as a matter of reasonable commercial practice deal with instruments which lack the indorsement of a payee. 9 Wigmore, Evidence, § 2580 at 571 (3d ed. 1940); Lewis, Hubbard & Co. v. Montgomery Supply Co., 59 W.Va. 75, 52 S.E. 1017 (1906).

the value of property wrongfully appropriated and not an action for injury resulting from negligence.[5]

The final defense is that FDIC's agents, in their actions and activities on the premises, so interfered with the banking activities of Marine as to cause or substantially contribute to Marine's wrongful appropriation of the draft, and that this negligent interference bars FDIC from recovery. In support of this theory, Marine cites a number of cases including Greenville Nat. Exchange Bank v. Nussbaum, 154 S.W. 2d 672 (Tex.Civ.App.1941). These cases concern negligent dealing with commercial paper by the owner thereof which enables another to raise the amount or forge a signature. There is no evidence that FDIC's personnel on the premises dealt with the draft in any manner or that the amount was raised or forged. F.S.A. § 673.3–406 provides:

Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.

The instrument involved here was not substantially altered or signed by any unauthorized person. The fact that there was, understandably, considerable operational confusion arising from Marine's takeover of the premises and acceptable assets of Central and from the presence of FDIC personnel working on the premises to untangle the troubled affairs of Central, is not a defense to conversion of the property of FDIC as Central's assignee.

Affirmed.

---

5. Koffler & Reppy, Common Law Pleading § 97ff. (1969). The proprietary nature of trover and conversion was recognized at least as early as the time of Lord Mansfield. Hambly v. Trott, 1 Cowp. 371, 98 Eng.Rep. 1136 (1776). For the early history of proprietary actions at common law see generally 2 Pollock & Maitland, The History of English Law, 173ff (Milsom ed. 1968).