**COMMONWEALTH FEDERAL SAVINGS & LOAN ASSOCIATION**

v.

**FIRST NATIONAL BANK OF NEW JERSEY et al.**

No. 76–3743.

United States District Court, E. D. Pennsylvania.

Feb. 7, 1979.

Patrick T. Ryan, Philadelphia, Pa., for plaintiff.

Davies, Davies & Hall by Joseph A. Pojanowski, III, Paterson, N. J., for First Nat. Bank of New Jersey.

Kay, Corino & Dwyer, Wildwood, N. J., Sheldon P. Davis, Philadelphia, Pa., for Commonwealth Federal Sav. & Loan.

Duffield & Lehrer, Haddonfield, N. J. and Philadelphia, Pa., for Viking Yacht Co.

Victor P. Petrone, Curtin & Heefner, Morrisville, Pa., for National State Bank.

Thomas J. Feeney, III, of Kania & Garbarino, Bala Cynwyd, Pa., for Garden State Bank.

Hawkins, Delafield & Wood, New York City, for Barclay Bank of New York.

Norman Peterkin, Orange, N. J., Oscar Bregman, Philadelphia, Pa., for C. Costenino Co., Inc.

Francis E. Shields and Jane Gross, and Sally Akan, Philadelphia, Pa., for The New Jersey Employment Sec. Agency.

Philip J. LiVolsi, Berlin, N. J., for First Nat. Bank of New Jersey.

White & Williams by George J. Hartnett, Philadelphia, Pa., for Central Penn Nat. Bank.

Raymond T. Cullen, Philadelphia, Pa., for Barclay's Bank of New York.

## MEMORANDUM OPINION AND ORDER

VanARTSDALEN, District Judge.

This is an action of statutory interpleader joining fifteen potential adverse claimants to the sum of $19,654.24 held by plaintiff. Jurisdiction is alleged under 28 U.S.C. § 1335 and venue pursuant to 28 U.S.C. § 1397. Defendant, New Jersey State Employment Security Agency (ESA), a division of the New Jersey Department of Labor and Industry, has asserted a counterclaim against the plaintiff in the amount of $30,675.19 plus interest.

ESA has also filed, pursuant to Rule 56, Fed.R.Civ.P., a motion for summary judgment on both the claim and its counterclaim.

There were originally filed on behalf of the other defendants answers, counterclaims, and cross claims, all of which will be dismissed as a consequence of the ruling hereafter made with respect to ESA's motion for summary judgment. It should also be noted that none of the other defendants has opposed ESA's claim to the whole amount.

As stated by the Court in *Poller v. Columbia Broadcasting System, Inc., et al.*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962):

> Summary judgment shall be entered only when the pleadings, depositions, affidavits, and admissions filed in the case "show that [except as to the amount of damages] there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.Rules Civ. Proc. . . . .

For reasons that will follow, ESA's motion for summary judgment on both claims will be granted.

The dispute revolves around six checks in the total amount of $50,329.43. The defendants are the six drawers of these checks, and the respective banks on which the checks were drawn, a collecting bank, ESA which is the asserted payee of each of the checks, and Ann Gabauer, an employee of ESA whose illegal actions in relation to each of the checks resulted in this litigation.

The drawers of the six checks mailed the checks to ESA for the purpose of satisfying their employment tax obligations to the State of New Jersey. The checks upon delivery to ESA came into the hands of defendant, Ann Gabauer, an audit clerk of ESA whose duties were to receive mail, open it, review the enclosed tax reports, compare the checks, if any, with the enclosed tax reports, and sort the reports and checks for further processing. (Ripley affidavit, ¶ 3, Exhibit C to Exhibits in support of defendant ESA's motion for summary judgment).

Ms. Gabauer was employed by ESA from April 13, 1976 to July 22, 1976. According to the information of the plaintiff, as stated at page 4 of the affidavit of William R. Bonetz, assistant vice president for Branch Operations of Commonwealth Federal Savings and Loan Association of Norristown, Pennsylvania:

Anne Gabauer was arrested in May, 1974 on two counts of embezzlement. She was arrested or indicted on February 10, 1976 on two counts of fraud and again on March 11, 1976 for embezzlement. On May 5, 1976, she was arrested and subsequently indicted for possession of stolen property. On July 14, 1976, she pleaded guilty to five counts of fraud in connection with bad checks.

The record is barren as to any investigation that may have been made with respect to her qualifications for the position for which she was hired by ESA, but it obviously was not very thorough. All of the six checks involved were eventually deposited to her account in the plaintiff bank.

On or about May 13, 1976, one month after she was hired, Ann Gabauer opened a savings account with plaintiff, Commonwealth Federal Savings and Loan Association of Norristown, Pennsylvania. She deposited into that account a check in the amount of $11,973.00 drawn by Viking Yacht Company on the Peoples Bank of New Jersey. Attached hereto as Check # 1 is a Xerox copy of the check which shows on its face the words "N. J. Employment Security," the date, check number,

amount and payee's name printed in matching, heavy block letters. The words "N. J. Employment Security" appeared about ½ inch above the words "To the Order of," after which words, in small type, appears A. E. Gabauer. As stated in plaintiff's response to the motion for summary judgment, page 3:

Presumably, the person at Viking Yacht who made the check failed to align the machine properly so as to put these words in the appropriate place.

Nevertheless, the check was endorsed in the name A. E. Gabauer and deposited to her account in plaintiff bank.

On or about June 2, 1976, Ms. Gabauer deposited to her account a check in the amount of $3,484.54 drawn by Farber Bros. Supply Co., on The National State Bank, Elizabeth, New Jersey. On the face of the check, a copy of which is attached hereto as Check # 2, appear the printed words "Pay to the order of" followed by the handwritten words "N. J. Employment Agency" immediately under which in handwriting obviously different, were the words "or Anne Gabauer." The check was endorsed "Ann E. Gabauer," and deposited to her account in plaintiff bank.

DB Communications drew a check on the Marine National Bank of Wildwood, New Jersey, in the sum of $417.48. It is handwritten and almost illegible. The payee apparently was originally "N. J. Security Agcy," but the lettering was obviously tampered with and endorsed only by "Ann E. Gabauer," and deposited to her account in plaintiff bank. A copy of this check is attached hereto as Check # 3.

On or about June 6, 1976, Ann Gabauer deposited to her account a check in the amount of $1,449.91, drawn by John Lee on Barclay's Bank of New York, and payable to "N. J. Employment Security Agency," a copy of which is attached hereto as Check # 4. On the back of the check were the words "Pay to the Order of Ann E. Gabauer, Joseph P. Sutton" and the signature, "Ann E. Gabauer." Nowhere in the endorsement does the name of the payee appear.

On June 16, 1976, Ms. Gabauer deposited to her account in plaintiff bank a check in the amount of $5,698.13, drawn by C. Cosentino Company, Inc., on First National Bank of New Jersey, Paterson, New Jersey, and payable to N. J. Employment Security Agency. The endorsement on the back of the check stated: "Pay to the Order of Ann Gabauer," and immediately thereunder, "John Brennan," under which appears the name Ann E. Gabauer. Nowhere in this endorsement appears the name of the payee, although it is clear from the face of the check that the purpose of the drawer was to pay certain taxes to the named payee, "N. J. Employment Security Agency." In the upper left part of this check, a copy of which is attached hereto as Check # 5, are the printed words "C. Cosentino Company, Inc., Tax Account," and immediately above the signature line of the drawer the same words appear. Apparently, the question of why a state tax collecting agency in New Jersey would transfer tax dollars to an individual in Pennsylvania never occurred to the plaintiff's teller who accepted the endorsement and deposited the check to the personal account of Ann Gabauer.

On July 1, 1976, Ann Gabauer deposited to her account another check, a copy of which is attached hereto as Check # 6, in the amount of $27,306.37, drawn by Tailored Skirts Company of North Bergen, New Jersey, on Garden State National Bank, Paramus, New Jersey, payable to New Jersey Employment Security Agency. On the back of the check appeared the endorsement, "Pay to the Order of Ann Gabauer," followed by the name, "Joseph T. Harding," under which appeared the endorsement of Ann E. Gabauer. Nowhere in the endorsement appeared the name of the payee, New Jersey Employment Security Agency.

Within the short time between April 13, 1976 and July 22, 1976, Ann Gabauer had credited to her personal account in the plaintiff bank on the basis of the six checks, the sum of $50,329.43. Within the shorter period of May 21, 1976, to July 12, 1976, this enterprising individual withdrew from her account the sum of $30,800.00, leaving in the account the sum of $19,654.24, which represented a part of the proceeds of the $27,306.37 check of Tailored Skirts Company, the last check deposited.

Ms. Gabauer's defalcations were discovered when a taxpayer, notified by ESA of claimed overdue employment tax, responded that the tax had been paid and presented a cancelled check to prove it. (Marino affidavit ¶ 13, Exhibit "F" to the motion for summary judgment).

On October 16, 1976, ESA informed plaintiff that Ann Gabauer had converted the checks and deposited them to her account, and therefore demanded payment from plaintiff of $50,329.43. (Complaint, ¶ 23). Plaintiff thereupon filed the present interpleader action, including as a defendant, Ms. Gabauer, with respect to whom it is stated at page 5 of plaintiff's response to the pending motion for summary judgment:

> The State of New Jersey indicted Ann Gabauer for the thefts of these checks, and on June 30, 1978, Ms. Gabauer pleaded guilty to the indictment. She is now incarcerated at the Women's Correctional Institute at Clinton, New Jersey, serving a term of from seven to ten years.

With respect to the merits of the case, Exhibit "I" in support of the motion for summary judgment, is the affidavit of James A. Ware, Assistant Commissioner, Income Security, Department of Labor and Industry for the State of New Jersey, executed September 25, 1978. In this affidavit appears the statement:

> 4. The New Jersey State Employment Security Agency has no outstanding claims against the six employers named in Paragraph 3 relating to the six checks which are the subject matter of this action.

The motion for summary judgment is based upon:

(a) The pleadings and documents attached thereto;

(b) Plaintiff's Answers to Interrogatories attached as Exhibit "G" to the Memorandum of Law of Defendant New Jersey State Employment Security Agency

in Support of its Motion for Summary Judgment;

(c) The Tellers' Manual of Commonwealth Federal Savings & Loan Association attached as Exhibit "H" to the Memorandum of Law of Defendant New Jersey State Employment Security Agency in Support of its Motion for Summary Judgment;

and certain affidavits attached as Exhibits "A", "B", "C", "E", "F", and "I" to the motion for summary judgment.

In response to an interrogatory as to plaintiff's banking policy (Exhibit "G"), plaintiff stated that since prior to 1965

(2) checks payable to Clubs, Companies, Organizations, etc., must be deposited, and only to accounts with titles the same as the payee.

Thus, it is obvious that if the plaintiff bank's own policy had been observed, the checks clearly made payable to N. J. Employment Security Agency (copies attached hereto as Checks # 4 and # 5), and the one made payable to New Jersey Employment Security Agency (Check # 6) could not have been converted by Ms. Gabauer. In this connection it is interesting to note that on August 3, 1976, plaintiff bank promulgated a Teller's Manual in which it incorporated the same policy as stated in the answer to the interrogatory. The manual specifically provides that checks may be cashed only if made payable to an individual; checks payable to clubs, companies, organizations, etc., must be deposited, and only to accounts with titles the same as the payee. It also provides that:

checks must be endorsed exactly as payable. Checks need not be endorsed with the exception of insurance drafts and government checks which must be endorsed if they are being deposited in an account belonging to the payee. They may be stamped: "Deposit to the credit of the within named payee." However, it is best to have all checks endorsed.

■ ESA bases its claim to the total amount of the six checks on its contention that plaintiff's acts resulted in a conversion of the checks. Section 3–419 of the Uni-

form Commercial Code, Pa.Stat.Ann. tit. 12A § 3–419, provides that "(1) An instrument is converted when . . . (c) it is paid on a forged indorsement." The cases also hold, in accordance with § 1–103 of the Uniform Commercial Code, which incorporates preexisting common law, that an action in conversion will lie where the endorsement is either unauthorized, *Salsman v. National Community Bank of Rutherford*, 102 N.J. Super. 482, 246 A.2d 162 (1968), or lacking altogether. *Federal Deposit Insurance Corporation v. Marine National Bank of Jacksonville*, 431 F.2d 341 (5th Cir. 1970); *Handel v. Manufacturers Hanover Trust Co.*, 16 U.C.C.Rep.Serv. 762 (N.Y.Supreme Ct. 1975); *Williams Mechanical Corp. v. Manufacturers Hanover Trust Co.*, 20 U.C.C.Rep. Serv. 468 (N.Y.Supreme Ct.1976). In *Federal Deposit Insurance Company v. Marine National Bank of Jacksonville, supra*, the acceptance for deposit to the account of but one of two named payees on the check imposed liability upon the bank accepting such deposit.

■ Plaintiff contends that it has no liability with respect to Checks # 1, # 2, and # 3, copies attached hereto, on the ground that the alleged conversion was made possible by the negligence of the drawers of the checks which, in turn, made possible the various alterations. Plaintiff concludes, with no citation of authority, that the drawers of the checks would be barred from recovery from the bank because of the drawer's negligence; therefore, the payee of the checks would also be barred. The contention that the drawers would be barred is said to rest upon § 3–406 of the Uniform Commercial Code which provides:

Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.

Plaintiff has submitted an affidavit of William R. Bonetz, assistant vice president for Branch Operations, in which, as respects each of the three checks, allegedly altered in some way (Checks # 1, # 2 and # 3), he expresses his opinion that the drawer of each check was negligent in some specified way in the execution of the instrument. From this, the affiant concludes that the teller in each case acted in accordance with reasonable commercial standards.

As respects the Viking Yacht Co. check, a copy of which is attached hereto as Check # 1, he states:

6. I have examined the document attached hereto as Exhibit "2", which is a copy from Commonwealth Federal's records of a check written by Viking Yacht Company in the amount of $11,973.00. In my opinion, a teller acting in accorance [sic] with reasonable commercial standards could easily have believed that A. E. Gabauer was the sole payee on that check. I am informed that the Viking Yacht Company intended to make the check payable to the New Jersey Employment Security Agency. Assuming this to be the case, I am of the opinion that the maker of the check was negligent in failing to place the words "N. J. Employment Security" anywhere near the proper place on the check.

In contrast to that is the affidavit of Harold Wallgren, executed on behalf of defendant ESA (Exhibit "E"). Mr. Wallgren was employed continuously in the banking business on a full-time basis from 1924 until his retirement in 1972 serving part of that time as vice president and cashier of the Philadelphia National Bank. With respect to the Viking Yacht Company check, he states:

21. The acceptance by Commonwealth Federal of check # 2 (Exhibit "b"), in the amount of $11,973.00 drawn by Viking Yacht Co. to the order of N. J. Employment Security , was a violation of reasonable commercial practices for the following reasons:

a. The check was prepared mechanically, with the date, check number, amount and payee's name *printed* in matching heavy block letters;

b. The check was visibly altered by *typing* the name "A. E. Gabauer" opposite the words "Pay" on the check;

c. The typing is out of place, since there are no other typed characters anywhere on the face of the check;

d. In addition, even after the alteration, the *printed* name of the original payee is much more prominently displayed than the *typed* name of the added payee;

e. The acceptance of a check bearing visible alterations, and made payable to a governmental entity, for deposit to an individual's account, was a violation of reasonable commercial standards of the banking industry.

As respects the check, a copy of which is attached hereto as Check # 2, the affidavit of plaintiff's assistant vice president, states:

7. I have examined the document attached to the Affidavit of Harold Wallgren as Exhibit "c", Check No. 3. It appears to be an enlarged copy of a check written by Farber Brothers Supply Company in the amount of $3,484.54. In my opinion, a teller acting in accordance with reasonable commercial standards might have believed that the N. J. Employment Security Agency and Anne Gabauer were alternate payees of that check. In my opinion, a reasonable teller could have paid that check on the endorsement of Anne Gabauer alone. I am informed that Farber Brothers intended to make that check payable to the New Jersey Employment Security Agency. Assuming that to be the case, I am of the opinion that the maker of the check was negligent in failing to align the name of the payee properly, and in failing to eliminate extra space.

In contrast to that, the Wallgren affidavit states:

22. The acceptance by Commonwealth Federal of check # 3 (Exhibit "c"), in the amount of $3,484.54, drawn by Farber Brothers Supply Co., made payable to N. J. Employment Security Agency, was in

contravention of reasonable commercial practices of the banking industry, for the following reasons:

a. The fact that a check was made payable to *either* a state governmental agency *or* an individual should in itself have caused further inquiry to ascertain the identity of the true owner of the check, as checks are not normally made payable in such a manner;

b. The check was visibly altered by the addition of the words "or Anne Gabauer" under the name of the designated payee on the face of the check;

c. The handwriting of the person who altered the check by adding the name of an alternate payee does not remotely resemble the handwriting of the person who wrote in the name of the state agency;

d. Acceptance of the check bearing visible material alterations on the face was a violation of reasonable commercial banking standards.

As to the check drawn by DB Communications (Check # 3), the affidavit filed by plaintiffs assistant vice president, William R. Bonetz, states:

8. I have examined the document attached to the Affidavit of Harold Wallgren as Exhibit "e", Check No. 5. This appears to be a check from D. B. Communications in the amount of $417.48. I am of the opinion that, given the general level of legibility of that check, a teller acting in accordance with reasonable commercial standards could have believed that Anne Gabauer was the sole payee of that check. I am informed that D. B. Communications intended to make the check payable to the New Jersey Employment Security Agency. Assuming that to be the case, I am of the opinion that the maker of the check was negligent in creating a check that illegible.

The Wallgren affidavit states:

24. The acceptance by Commonwealth Federal of check # 5 (Exhibit "e"), in the amount of $417.48, drawn by DB Communications to the order of N. J. Employment Security Agency, was a violation of reasonable commercial practices of the banking industry for the following reasons:

a. This is another instance of a visibly and fraudulently altered check which should not have been accepted for deposit to an individual's account;

b. The check was filled in by hand, with the name of the payee abbreviated;

c. It is apparent that the name of the payee as originally inscribed was crudely overprinted by hand in an attempt to give the impression that the check was drawn to the order of "Ann E. Gabauer";

d. The result is an almost indecipherable scrawl which should have placed the bank teller on notice of the possibility of tampering.

In inspection of the aforementioned three checks reveals the material facts and leads to the conclusion that one need not be an experienced bank teller, or require advice of one who is, to conclude that there is something wrong with the three checks, and that the average layman would not have given value for such checks on the endorsement of Ms. Gabauer. When that conclusion accords with the *reasoned* opinion of an expert that acceptance by a bank teller of such checks is a violation of reasonable standards of the banking industry, the issue may be resolved on a motion for summary judgment.

Plaintiff has urged that the words "N. J. Employment Security" on the Viking Yacht check, and "N. J. Employment Security Agency" on the Farber Bros. Supply Co. check, are not sufficient to alert a teller to the fact that a corporation or state agency is named on the check. Assuming, *arguendo*, the accuracy of the observation, the fact remains that on the face of the checks and in the space to be used for the name or names and addresses of the payee or payees, appears a name which does not purport to be that of a natural person but of some kind of organization, agency, or perhaps a corporation. That, plus the other facts apparent from a mere inspection of the checks would suggest to a reasonable person with no banking experience that

something *may* be wrong with each instrument. Under those circumstances how can it be logically argued that accepting the checks for deposit to an individual's personal account by the bank teller with no inquiry, was in accordance with reasonable commercial standards?

Plaintiff urges at page 11 of its memorandum that its liability, if any, should be limited to the difference between the $19,-654.24 remaining in the account and $15,-875.02, the amount of the three altered checks (Checks # 1, # 2 and # 3), the proceeds of which had been withdrawn by the depositor. This position is unsound. Although it rests upon the alleged negligence of the payee, § 3–406 of the Uniform Commercial Code affords protection only to "a drawee or other payor who pays the instrument in good faith *and in accordance with the reasonable commercial standards of the drawee's or payor's business.*" (Emphasis added). Furthermore, the claim is by the payee ESA for the amount remaining in possession of the plaintiff being the balance of the proceeds from the last check deposited, Check # 6.

Throughout its entire memorandum plaintiff emphasizes the negligence of the payee and asserts that the question of negligence is one for a jury. Assuming the accuracy of that contention as a general rule, and further assuming that the payee was negligent as respects the three checks, nevertheless, that negligence loses its significance where the alterations are, as here, so obvious on the face of the instruments that accepting such checks for deposit "was not in accordance with the reasonable commercial standards applicable to the bank's business."

This leaves for determination the issue as respects the remaining three checks, two of which (Checks # 4, # 5) were made payable to N. J. Employment Security Agency and the third, Check # 6, payable to New Jersey Employment Security Agency.

As previously pointed out, these three checks were deposited to the account of Ms.

Gabauer on the basis of endorsements which did not include the name of the payee, but instead bore the endorsement "Pay to the order of Ann E. Gabauer" followed, in each case, by the signature of a specific person, under whose name appeared the endorsement of Ann E. Gabauer. Here, again, plaintiff contends that a factual issue of negligence must be left to a jury. As previously shown, it may be conceded that the payee was negligent. That, however, becomes unimportant if the paying bank accepted the checks for deposit, and such acceptance was not in accordance with reasonable commercial standards.

It is obvious that the collection process involves certain risks. Commercial expediency and the Uniform Commercial Code place the burden directly upon the first bank in the collection chain to make sure that endorsements are valid. This is reasonable because the first bank is in the best position to assure that it is taking the item from someone with good title. It has been held, therefore, that the *second* bank in the chain, in relation to a check which was paid even though one of the payee's endorsements was missing, was not negligent in failing to carefully inspect the endorsements. *Federal Deposit Insurance Corp. v. Marine National Bank of Jacksonville, supra.* The question of the setting of liability was dealt with in *Continental Bank & Trust Co. v. American Bank & Trust Co. of Pennsylvania,* 217 Pa.Super. 371, 274 A.2d 549 (1970). In a concurring opinion at page 375, 274 A.2d 549, it is stated:

In deciding which of the parties must bear this loss, the court below correctly held that Section 4–207 of the Code is controlling. That section provides in pertinent part that "[e]ach . . . collecting bank who obtains payment or acceptance of an item and each prior . . . collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that (a) he has good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a

good title." Thus the Code puts the ultimate burden on the first bank honoring the instrument to make certain that the item is properly indorsed.

Plaintiff contends that the designation of the payee of each check did not indicate that the payee was a corporation or a state agency, and, therefore, the cases cited by the payee are not controlling. The factual differences between the cases cited and the present one are immaterial because whether or not payable to a corporation, or a state agency, the fact remains that the checks were accepted as a result of an endorsement which did not include the stated name of the payee. The stated name of the payee was one which did not purport to be the name of a natural person.

It cannot be denied that accepting the checks, endorsed as they were, was contrary to the policy of plaintiff bank which provided:

2. Checks payable to clubs, companies, organizations, etc., must be deposited, and only to accounts with titles the same as payee.

(Exhibit H, in support of defendant's motion for summary judgment). However, the issue is whether the bank's acceptance of such checks (although admittedly contrary to its own policy) was a failure to observe reasonable commercial standards.

It is quite significant that the affidavit supplied by plaintiff bank made no reference to these three checks (Checks # 4, # 5 and # 6), an implied admission that the affiant could not truthfully state that acceptance of these checks in violation of the bank's express policy was, nevertheless, in accordance with reasonable commercial standards.

In *Federal Deposit Insurance Corp. v. Marine National Bank of Jacksonville, supra,* footnote 4, at 344, The court stated:

Indeed, the court may take judicial notice of the fact that banks do not as a matter of reasonable commercial practice deal with instruments which lack the endorsement of a payee. 9 Wigmore, Evidence, § 2580 at 571 (3d ed. 1940); *Lewis, Hubbard & Co. v. Montgomery Supply Co.,* 59 W.Va. 75, 52 S.E. 1017 (1906).

As stated in the Wallgren affidavit:

15. The acceptance by a bank of checks payable to a corporation, a trade style, an estate, a trust, and most particularly, a government agency, for deposit to the credit of an *individual* account, as in this case, is neither a standard nor a reasonable commercial banking practice. Such deposits should never be accepted by a bank without careful investigation, even with what purports to be an official, authorized endorsement of the payee entity.

The reason is obvious and logical because

17. In order to collect deposited items, a depository bank must guarantee all prior endorsements, and it must be satisfied that it is dealing with the true owner, or the true owner's authorized agent, of such items.

By appropriate affidavits, it has been established that neither Ms. Gabauer, nor the three persons who allegedly endorsed to her the three checks made payable to the New Jersey agency, had authority to so do. Indeed, according to the affidavit of Edwin Gniewkowski, Chief of Personnel Services State Employment Security Agency, the New Jersey agency had no such persons as employees, other than Ms. Gabauer.

The conclusion reached may be stated in the words of the court in *Titan Air Conditioning Corp. v. Chase Manhattan Bank,* 20 U.C.C.Rep.Serv. 1234, 1235 (N.Y.Sup.Ct. 1977), "[u]ndisputedly, established banking practice mandates that any check payable to a designated business entity can be accepted for deposit only into the account of such named payee."

Also in support of the conclusion that it is immaterial that the plaintiff's bank teller did not know that the designated payee was a corporation or legal agency of New Jersey is the statement in H. Wallgren, Principles

of Bank Operations 92 (rev. ed. 1975), whose affidavit has previously been referred to:

Many unlawful conversions involve checks payable to legal entities such as corporations, trade-styles, partnerships, decedents' estates, rather than to natural persons. Checks payable to corporations are normally deposited to an account in the payee corporation's name and should never be accepted for deposit to an account in any other name without prior investigation.... Similarly, checks payable to any other kind of legal entity should not be accepted for deposit to any account in any other name and certainly not to an account in an individual name without careful investigation.

In the affidavit supplied by the plaintiff, it is asserted with respect to each check, that plaintiff did not permit withdrawal of funds until after the checks had been paid by the respective drawee banks. This fact does not insulate plaintiff bank from liability. As previously shown, there is a warranty of good title which runs from the first bank in the chain of collection, here the plaintiff bank, to the collecting and drawee banks designed to protect such banks in cases such as this. U.C.C. § 4–207.

■ The law is clear and precise. Where a bank wrongfully appropriates a draft without a necessary endorsement, the situation is analogous to payment on a forged endorsement, which is a conversion under U.C.C. § 3–419(1)(c). A common law conversion remedy applies where a bank pays a check on a missing endorsement. 2 Anderson, Uniform Commercial Code, § 3–419:4(d) (1971, 1977 Cum.Supp.), *cited in Peoples National Bank v. American Fidelity Fire Insurance Co.*, 39 Ind.App. 614, 386 A.2d 1254 (1978).

The conclusion is, therefore, that the motion for summary judgment of defendant New Jersey State Employment Security Agency on the complaint will be granted in the amount of $19,654.24, and on the counterclaim in the amount of $30,675.19, with interest thereon from the date of deposit of each check, together with costs and disbursements.

■ The bank's liability for interest rests upon the finding that its conduct resulted in conversion, which is a tort. In such a situation where a liquidated sum of money is owing, interest may be recovered from the date of the commission of the tort, *Erie School District v. Griffith*, 203 Pa. 123, 53 A. 34 (1902), at the rate of 6% per annum. 41 P.S. § 201 (Supp. 1978–79).

■ The remaining defendants have no valid claim to the funds held by plaintiff. The payee of the checks, New Jersey Employment Security Agency, credited each drawer's account as if it had been made at the proper time; consequently, the drawers have sustained no loss, and, therefore, have no cause of action for the negligence of plaintiff bank. Even if their accounts had not been credited, a suit by the payee against a depository bank would probably constitute a ratification of the collection process and bar an action against the drawer of the check on the obligation for which the check was drawn. *Cooper v. Union Bank*, 9 Cal.3d 371, 107 Cal.Rptr. 1, 507 P.2d 609 (1973); *Abraham & Co. v. Dollar Savings Bank of New York*, 370 N.Y.S.2d 1, 48 App.Div.2d 807 (1975).

Under § 4–207(1)(a) of the Uniform Commercial Code, a bank which pays a check on a forged endorsement may recover payment from a prior collecting bank or person who received payment thereof, such having warranted to the payor bank or other payor who in good faith pays the item, that he has a good title to it. The six defendant drawee banks have no liability to their respective drawers in this case because the tax accounts of the drawers have been credited in full by the payee of the checks. Since liability falls entirely on plaintiff bank, the defendants' claims, counterclaims, and cross claims *inter se*, are dismissed, none having sustained a loss as a result of the conversion of the checks.

Check #1

Check #2

**DB COMMUNICATIONS**
381 SHORE ROAD
BURLEIGH, N.J. 08210

THIS CHECK IS IN PAYMENT OF THE FOLLOWING:

1667

MARINE NATIONAL BANK
WILDWOOD, N.J.

55-453
312

PAY Four hundred seventeen Dollars and 48/100 DOLLARS

TO THE
ORDER OF

| DATE | CHECK NO. | AMOUNT |
|------|-----------|--------|
| 6.4.76 | 1667 | 417 48 |

DB COMMUNICATIONS

AUTHORIZED SIGNATURE

⑈0312⑈0453⑈  5 13⑈438⑈4⑈          ⑈0000041748⑈

FOR DEPOSIT

Check #3

291835 007
3/21/76

8887

PAY TO THE ORDER OF *W. J. Employment Security Agency*                    4/29/10 76    1-852/250

$1449 91/77

*THE SUM 1449 DOLS 91 CTS*                    DOLLARS

**BARCLAYS BANK**
OF NEW YORK
200 PARK AVE., NEW YORK, N.Y. 10022

⑆90888 7⑆ ⑆0 260⑆0852⑆ 05 1⑆85868⑆7⑆ : ⑆0000 14499 1⑆

Check #4

310

Check #5

Check #6