**O'MARA ENTERPRISES, INC., Plaintiff,**

v.

**MELLON BANK, N.A., Equibank and Peoples Bank of Western Pennsylvania, Defendants,**

v.

**HERITAGE BANK, Third Party Defendant, Fourth Party Plaintiff,**

v.

**Timothy J. O'MARA, Vincent J. O'Mara and James P. O'Mara, Fourth-Party Defendants.**

Civ. A. No. 82–1735.

United States District Court, W.D. Pennsylvania.

Jan. 16, 1985.

David M. Neuhart, Pittsburgh, Pa., James C. Carpenter, Columbus, Ohio, Adam Scurti, Steubenville, Ohio, for plaintiff and fourth-party defendants.

Paul S. McGrath, Jr., Pittsburgh, Pa., for defendant Mellon Bank.

James P. Ross, Pittsburgh, Pa., for defendant Equibank.

Stephen Ross Green, New Castle, Pa., for defendant Peoples Bank.

Anthony P. Picadio, Pittsburgh, Pa., for defendant Heritage Bank.

## OPINION

MANSMANN, District Judge.

This matter comes before the Court on various Motions for Summary Judgment as well as Fourth-Party Defendants' Motion to Dismiss. For the reasons set forth below, Mellon, Equibank and Peoples' Motion against O'Mara is denied as is Heritage's Motion against O'Mara. Additionally, Equibank and Peoples' Motion against Mellon is granted as is Mellon's Motion against Heritage. Also for the reasons stated herein, Fourth-Party Defendants' Motion to Dismiss the Fourth Party Complaint is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, O'Mara Enterprises, Inc. ("O'Mara"), is a West Virginia corporation with its principal place of business in Steubenville, Ohio. Since 1972, O'Mara has operated fast food restaurants at various locations in Ohio, West Virginia and Pennsylvania.

During the time at issue, the last quarter of 1979 and the first half of 1980, either W. Gail Smith or Timothy J. O'Mara was the president of O'Mara. The other O'Mara brothers, Vincent J. and James P., were also officers of O'Mara and Terry R. Thompson was its controller during this period.

The Gail Smith Development Company ("GSD") had a contractual arrangement with O'Mara to manage its office, accounting and general finances. Among these services were the calculation, bookkeeping and check writing services regarding O'Mara's employees' weekly federal with-

holding taxes and social security payments. Terry R. Thompson was the controller of GSD.

During the period at issue, O'Mara maintained some of its corporate checking accounts with Defendants, Mellon Bank, N.A. ("Mellon"), Equibank and Peoples Bank of Western Pennsylvania ("Peoples") at branches within close proximity to the various O'Mara restaurants.

Additionally, during this period, O'Mara utilized an Internal Revenue Service Trust Account at Heritage Bank ("Heritage"). By agreement with O'Mara, GSD was to calculate O'Mara's employees' weekly federal withholding and social security taxes, to write the checks and to deposit the appropriate funds into this trust account. These checks were made payable to the order of Heritage Bank, signed by Timothy J. O'Mara [1] and drawn on the Mellon, Equibank and Peoples accounts referenced above.

This system apparently worked without difficulty until the third quarter of 1979 when GSD began having financial problems and diverted the funds intended by O'Mara to pay its employees' federal taxes into a GSD account at Heritage. By August of 1980, over $400,000 had been so diverted, a small percentage of which is at issue instantly. Upon learning of this scheme, O'Mara obtained the resignations of Terry R. Thompson and W. Gail Smith, who later became the subject of bankruptcy proceedings. It is undisputed that this diversionary scheme was wholly unauthorized by O'Mara.

As noted above, the checks at issue were made payable to the order of Heritage Bank. Further, at the time Heritage was given possession, the checks were stamped on the reverse side with the following:

Pay to the Order of First National Bank & Trust Co. [2] in Steubenville, Ohio

FOR DEPOSIT ONLY

GAIL SMITH DEVELOPMENT

# 009–9215

---

1. Timothy J. O'Mara's signature on these checks was actually a facsimile, *i.e.,* created from a stamp entrusted to GSD. This signature or use of the stamp is not at issue currently.

2. This is the predecessor to Heritage.

Additionally, directly under the above was the signature facsimile of W. Gail Smith. It is also undisputed that Heritage credited GSD's account the amount of each such check.

Prior to placing the checks in the collection process, Heritage stamped each check with its indorsement:

Pay any Bank, P.E.G. HERITAGE BANK, Toronto, Ohio

Each check was then sent to Mellon, which is Heritages' correspondent bank for this geographical area.

With respect to the Equibank and Peoples checks, Mellon stamped the reverse side with the following indorsement:

Pay Any Bank

MELLON BANK, N.A.

Pittsburgh, Pa.

Mellon then forwarded to Equibank or Peoples their respective checks, while keeping its own.

Each of these three banks then paid these checks by debiting O'Mara's respective checking accounts. The total amount of funds diverted from O'Mara and intended for deposit in the tax trust account which is at issue here is: $6,363.50 from the Mellon checking account; $7,211.75 from the Peoples checking account and $13,896.06 from the Equibank checking account, totalling $27,471.31.

*    *    *

Thereafter, in August of 1982, Plaintiff O'Mara filed the instant Complaint against Mellon, Equibank and Peoples, requesting that each bank pay it the aforementioned sums, plus interest, and claiming that each bank breached its contractual and statutory duties by improperly debiting O'Mara's respective checking accounts and thereby converting these funds. Additionally, O'Mara alleges that the checks, which were drawn to the order of Heritage Bank, were not properly indorsed and that the banks failed to require the proper indorsement. O'Mara also claims that the Defendants failed to exercise due care and failed to act in a commercially reasonable manner.

Mellon, in answering the Complaint, denied liability and pleaded various affirmative defenses.

Equibank and Peoples answered separately; each denied liability and asserted various affirmative defenses and each interposed a Crossclaim against Mellon as the collecting bank based upon alleged breach of warranties, among other things.

Mellon replied to the Crossclaim against it by Peoples denying the averments contained therein and asserting various affirmative defenses. Mellon simultaneously impleaded Heritage as a third-party defendant, seeking indemnity in the event it is found liable to O'Mara and/or to Equibank and Peoples. Count II of the Third-Party Complaint was later amended to assert that the checks at issue contained Heritage's indorsement.

Similarly, Mellon interposed its Reply to Equibank's Crossclaim and included various affirmative defenses. Heritage answered the Amended Third-Party Complaint, denying liability and interposing various affirmative defenses.

Heritage then moved to stay all proceedings in the instant action until such time as the adversary proceeding instituted by O'Mara and arising out of the Chapter 11 Bankruptcy proceedings regarding W. Gail Smith d/b/a Gail Smith Development Company pending in the Southern District of Ohio, as well as the action against Heritage, et al. instituted by O'Mara pending in the Ohio State court system reach a final determination. This motion was denied.

Subsequently, O'Mara moved to strike Mellon's Third-Party Complaint against Heritage due to Mellon's failure to implead Heritage within the ten-day period set forth in FED.R.CIV.P. 14(a). Mellon responded with a motion to implead Heritage nunc pro tunc, noting that Heritage was impleaded within three days of FED.R. CIV.P. 14(c) requirements, which delay had not resulted in prejudice. O'Mara's motion was denied.

Subsequently, Heritage moved to join Timothy J., Vincent J. and James P.

O'Mara ("the O'Mara brothers"), in their individual capacities as fourth-party defendants. This motion was granted. 101 F.R.D. 668.

The Fourth-Party Complaint alleges, *inter alia*, that the O'Mara brothers failed to exercise due care as officers of O'Mara. Prior to the service of an answer, the O'Mara brothers moved to dismiss the action against them, claiming, *inter alia*, a lack of personal jurisdiction. This motion is pending before the Court.

*The Cross-Motions for Summary Judgment*

Various parties moved for summary judgment against various other parties. The contentions of the parties with respect to these motions are summarized below.

1. Mellon, Equibank and Peoples' Motion for Summary Judgment against O'Mara.

The Defendant banks jointly moved for summary judgment against O'Mara, claiming, *inter alia*, although O'Mara alleges that each of them honored checks without the proper indorsement, *i.e.*, the indorsement of Heritage, the named payee, that this is contrary to the undisputed fact that each such check contains the indorsement of Heritage.

2. Heritage's Motion for Summary Judgment against O'Mara (joined by Mellon and Peoples).

Although Heritage and O'Mara have no direct claims running between them, Heritage, as Third-Party Defendant, seeks summary judgment, against O'Mara, claiming that all the checks at issue were paid over the proper and necessary indorsements. Heritage argues that when each check reached each respective defendant bank, the checks contained the necessary indorsement, *i.e.*, the indorsement of Heritage, the

named payee. Accordingly, Heritage argues that the Defendants should not be held liable, and therefore, it should not be as well.

Alternatively, Heritage argues that since it followed O'Mara's instructions set forth in its corporate resolution,[3] neither Heritage nor its transferees can be held liable. Heritage also claims that, at the very least, Smith and Thompson possessed apparent authority vis-a-vis Heritage.

O'Mara submitted a single brief in opposition to these two motions for summary judgment against it and has not itself applied for summary judgment. In its papers O'Mara asserts that Mellon, Equibank and Peoples are liable to it because, as drawee banks, they are obligated under 13 PA. CONS.STAT. § 4401 not to pay items which are not properly payable. O'Mara further asserts that the checks in question were not "properly payable" as they were not indorsed by the named payee in an "unbroken sequential chain" pursuant to 13 PA.CONS.STAT. § 3201(C).

With respect to Heritage, O'Mara asserts that Heritage was not a holder and consequently, negotiation never took place pursuant to 13 PA.CONS.STAT. §§ 3201(c) and 3202(a).[4] O'Mara also asserts that Heritage's payment of the checks to GSD was a violation of its order since the indorsement of the named payee was missing. O'Mara claims that because these checks were not payable to GSD and Heritage's "pay any bank" stamp is not under these circumstances a proper indorsement, Mellon, Equibank and Peoples are strictly liable to O'Mara and must recredit its accounts.

With respect to O'Mara's corporate resolution, O'Mara asserts that it cannot exculpate Heritage from liability as the Heritage tellers did not consider it when they deposited the checks into the GSD account, rely-

---

3. Heritage states that the corporate resolution "provided to Heritage Bank to pay to Thompson or W. Gail Smith proceeds of any checks payable to Heritage Bank so long as the checks were signed or endorsed by Smith or Thompson." Heritage's Brief at 15.

4. O'Mara asserts that since GSD, Heritage's immediate transferee, was not a holder it therefore could not transfer more rights than it had, pursuant to 13 PA.CONS.STAT. § 3201(a).

ing on 13 PA.CONS.STAT. §§ 4103(a) and 1102(c). O'Mara also disputes Heritage's argument that the corporate resolution transformed the checks in question to "bearer paper." In any event, O'Mara argues that the terms of § 1(B) of the resolution are not complied with by the GSD restrictive indorsement "for deposit only."

Although O'Mara fails to articulate clearly which facts are in dispute, it also asserts that there exists a factual dispute regarding due care so as to preclude the granting of summary judgment in Heritage's favor.

Concerning the Mellon, Equibank and Peoples motions, O'Mara claims, without any substantiation, that FED.R.CIV.P. 56(c) precludes the granting of their motions against it. Rather, O'Mara claims that it should be granted summary judgment. This is asserted notwithstanding that O'Mara did not apply to the Court for this relief, that it claims factual issues are in dispute so as to preclude summary judgment and that it simultaneously requests that this matter be set down for trial.

Additionally, Heritage submitted a reply brief in which it argues that it followed the instructions of the authorized agent of O'Mara by depositing the funds into the GSD account. Further, Heritage asserts "[b]ecause O'Mara was the maker of the check and Heritage was the payee, no indorsement was necessary to transfer title." Reply Brief at 2. Heritage also asserts that negotiation took place when the checks were delivered, in conformity with 13 PA.CONS.STAT. § 3202.

Moreover, Heritage asserts that since its indorsement appears on the check, and it is the payee, the "necessary" indorsement was on the checks and Mellon, Equibank and Peoples properly debited O'Mara's accounts and therefore the Defendant Banks are not liable to O'Mara.

With respect to the corporate resolution, Heritage asserts that it cannot be found negligent when it simply followed O'Mara's instructions, and that the tellers' lack of knowledge of the resolution is not relevant.

3. Equibank and Peoples' Motion for Summary Judgment Against Mellon.

The basis of this motion is that Mellon, as collecting bank, extended certain warranties to Equibank and Peoples, as payor banks. More specifically, pursuant to 13 PA.CONS.STAT. §§ 4207 and 3417, these warranties included: (1) that Mellon had good title; (2) that Mellon was authorized to obtain payment; (3) that all signatures were genuine or authorized; and (4) that no defense of any party was good against Mellon.

In opposition, Mellon asserts that even if Equibank and Peoples are entitled to judgment against Mellon, should the indorsements be determined improper, it is Heritage that has the ultimate liability.

Further, Mellon contends that Equibank and Peoples should be estopped from claiming that Mellon breached any warranties because any irregularity on the checks should have been more apparent to Equibank and Peoples since they were the payor banks. In this connection, Mellon asserts that the two banks had either actual or constructive knowledge and failed to exercise good faith in the payment of the checks as required under 13 PA.CONS. STAT. §§ 4207 and 3417, notwithstanding that Mellon also paid checks drawn on its account.

Additionally, Mellon asserts that Heritage, as the first bank in the collecting chain, should bear the ultimate liability to O'Mara as it breached its warranties to Mellon as well as to Equibank and Peoples. According to Mellon, Heritage warranted under 13 PA.CONS.STAT. §§ 4207 and 3417, among other things: (1) that it had good title to the checks and (2) that all signatures were genuine and authorized.

In reply, Equibank and Peoples again assert that Mellon is liable to them since Mellon guaranteed all prior indorsements when it forwarded the checks to Equibank and Peoples. Further, with respect to Mellon's argument that Equibank and Peoples failed to exercise good faith, these banks contend that this argument is lacking in factual substantiation.

4. Mellon's Motion for Summary Judgment against Heritage.

In support of this motion, Mellon asserts that in the event that O'Mara prevails against Mellon on its Complaint, and if Equibank and Peoples prevail against Mellon on their Crossclaim, then Heritage is liable to Mellon for all these claims. More specifically, Mellon claims that Heritage, as the first bank in the collection chain and by virtue of its indorsement "Pay Any Bank, P.E.G. Heritage Bank" on each check, warranted to Mellon when it presented the checks for collection that all prior indorsements were proper. Mellon further asserts that by virtue of this indorsement Heritage gave warranties to Mellon and if it is determined that any prior indorsements were improper, Heritage must be determined to have breached those warranties. Mellon also contends that, as between banks, the ultimate liability should be placed on the bank first honoring the check, *i.e.*, Heritage, as it is in the best position to ascertain whether the indorsements are proper, and Mellon, as the second bank in the collecting chain, is entitled to rely on Heritage's warranties.

In opposition, Heritage initially asserts that it is premature for the Court to determine if Heritage is liable to Mellon, as there exist factual disputes with regard to O'Mara's claim against Mellon [which liability is not before the Court presently]. With respect to the Third-Party claim, Heritage asserts that factual issues raised by its affirmative defenses are in dispute *i.e.*, the claimed lack of good faith by Mellon, whether Mellon should be estopped from claiming breach of warranty and whether Mellon failed to assert its breach of warranty claim against Mellon in a reasonable period of time. Heritage further contends that it is entitled to develop factually its "fictitious payee" defense along with its "holder in due course" defense.

In reply, Mellon asserts that the viability of these purported defenses has not been supported by the proffering of any factual assertions, and under FED.R.CIV.P. 56(e) the party opposing the motion may not simply "rest upon the mere allegations or denials of his pleadings, but ... must set forth specific facts."

*The O'Mara Brothers' Motion to Dismiss The Fourth-Party Complaint*

In addition to the applications set forth above, also before this Court is the O'Mara brothers' Motion to Dismiss Heritage's Fourth-Party Complaint. The motion asserts that this Court lacks *in personam* jurisdiction over Timothy J. O'Mara, a resident of Ohio, and Vincent M. O'Mara and James P. O'Mara, residents of West Virginia, under both the Pennsylvania long-arm statute and the due process clause of the Constitution. Movants admit that as corporate officers of O'Mara they have contacts with this state, but assert that they do not have these contacts as individuals. Movants have also supplied affidavits regarding the nature of their contacts in Pennsylvania which, apart from occasional social activities in this state, are related to the business of O'Mara.

Alternatively, the O'Mara brothers have moved to dismiss the action for failure to state a cause of action for indemnity under Ohio law, which they claim applies.

In opposition, Heritage asserts that since the O'Mara brothers' out-of-state actions caused harm in Pennsylvania, this Court may invoke its jurisdiction in conformity with the current long-arm statute and with the constitutional requirements of due process. Additionally, Heritage asserts that Pennsylvania law regarding indemnity and contribution should apply to the fourth-party action, and under its application, the Fourth-Party Complaint states a cause of action.

## DISCUSSION

*The Cross-Motions For Summary Judgment*

In accordance with FED.R.CIV.P. 56(c), the district court, in order to grant a motion for summary judgment, must determine that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law." *See also, e.g., Sames v. Gable*, 732 F.2d 49, 51 (3d Cir.1984). Moreover, the district court must " 'resolve any doubts as to the existence of genuine issues of fact against the moving parties' " and " 'inferences to be drawn from the underlying facts … must be viewed in the light most favorable to the party opposing the motion.' " *Continental Insurance Co. v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982) (citations omitted). However, under FED.R. CIV.P. 56(e), a party opposing a motion for summary judgment may not simply rest upon the allegations or denials contained in the pleadings. *See also, e.g., Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir.1981). Rather, in resisting the motion, the party "must set forth specific facts showing that there is genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." FED.R.CIV.P. 56(e). *See also, e.g., Ness v. Marshall*, 660 F.2d at 519.

While keeping cognizant of the above-noted standards, the Court will decide which, if any, of the moving parties are entitled to summary judgment.

\* \* \*

■ 13 PA.CONS.STAT. ("Uniform Commercial Code") § 3201(c) (Purdon 1980) provides, *inter alia*, that "[n]egotiation takes effect only when the indorsement is made and until that time there is no presumption that the transferee is the owner." Further, negotiation is defined in § 3202(1) of the Uniform Commercial Code as "the transfer of an instrument in such form that the transferee becomes a holder." A holder, as defined by § 1201 of the Uniform Commercial Code is a "person who is in possession of an … instrument … issued or indorsed to him or to his order or to bearer or in blank." Moreover, "[t]he holder of an instrument whether or not he is the owner may transfer or negotiate it …" § 3301 of the Uniform Commercial Code.

In the case at bar, although the checks at issue were payable to the order of Heritage, prior to the time Heritage gained possession and placed its indorsement on these checks, GSD placed the restrictive indorsement—"FOR DEPOSIT ONLY GAIL SMITH DEVELOPMENT"—on these same checks.

GSD did this notwithstanding that it was not a holder since the checks were not "issued or indorsed to [it] or to [its] order or to bearer or in blank," in conformity with § 1201 of the Uniform Commercial Code.

Since GSD was not a holder, it could not transfer or negotiate the checks pursuant to § 3301. Moreover, by placing its indorsement on the checks, it destroyed the negotiability of the checks, even vis-a-vis Heritage, the named payee. Therefore, because of GSD's indorsement, Heritage did not become a holder, notwithstanding that the checks were originally payable to Heritage's order. Additionally, Heritage could not become a holder pursuant to § 3201 of the Uniform Commercial Code as "[t]ransfer of an instrument vests in the transferee such rights as the transferor has therein …." Therefore, because GSD was not a holder, Heritage, its immediate transferee, was not a holder.[5]

As noted above, after Heritage had possession of the checks at issue, the checks were indorsed by it and then sent to Mellon, the collecting bank. With respect to checks other than its own, Mellon forwarded the respective checks to Equitable or Peoples after Mellon indorsed the checks. (Each drawee bank then paid these checks by debiting the respective O'Mara account.)

Section 3417(2) of the Uniform Commercial Code provides that the transferor of an instrument warrants to his transferee (and to any subsequent holder acting in good faith if the transfer is by indorsement) the following:

---

**5.** This Court rejects Heritage's arguments that no indorsement was necessary "because O'Mara was the maker of the check and Heritage was the payee", and that negotiation took place when the checks were delivered. Heritage's Re-

ply Brief at 2. As set forth above, the GSD indorsement prevented further negotiation, and, in any event, these checks were not "bearer paper" as also asserted by Heritage.

(1) he has a good title to the instrument or is authorized to obtain payment or acceptance on behalf of one who has a good title and the transfer is otherwise rightful;

(2) all signatures are genuine or authorized;

(3) the instrument has not been materially altered;

(4) no defense of any party is good against him and

(5) he has no knowledge of any insolvency proceeding instituted with respect to the maker or acceptor or the drawer of an unaccepted instrument.

Since in this case the transferees are banks, Article 4 of the Uniform Commercial Code, "Bank Deposits and Collections," also applies.

In this situation, Heritage is the collecting bank (as is Mellon) which is defined as "[a]ny bank handling the item for collection except the payor bank" (payor bank is defined as "[a] bank by which an item is payable as drawn or accepted"). § 4105 of the Uniform Commercial Code.

Pursuant to § 4207(2) of the Uniform Commercial Code, a collecting bank which transfers an item warrants the following to its transferee and subsequent collecting bank:

(1) he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title and the transfer is otherwise rightful;

(2) all signatures are genuine or authorized;

(3) the item has not been materially altered;

(4) no defense of any party is good against him and

(5) he has no knowledge of any insolvency proceeding instituted with respect to the maker or acceptor or the drawer of an unaccepted item.

At the time Heritage transferred the checks to Mellon, Heritage's transferee and subsequent collecting bank, Heritage warranted to Mellon under §§ 4207(2) and 3417(2) of the Uniform Commercial Code, *inter alia*, that it had good title, and that the transfer is otherwise rightful, that all signatures were genuine or authorized and that no defense was good against it. As set forth above, these checks were not capable of negotiation. Due to these transfer warranties, as between Mellon and Heritage, the first bank in the collection chain [6] bears the liability, should O'Mara prevail against the Defendant Bank(s).

As noted above, after Mellon received the checks from Heritage, with respect to those drawn on the Peoples and Equibank accounts, Mellon placed its indorsement thereon and forwarded the checks to the respective drawee bank.

Similarly, at the time Mellon transferred the respective checks to Peoples and Equibank, under § 4207(2) of the Uniform Commercial Code it made the same warranties to these transferee banks as Heritage had made to it. It is because of these transfer warranties that Mellon bears the liability as between it and Peoples and Equibank under their respective Crossclaims, should O'Mara prevail against the latter two banks. However, should this transpire, it is Heritage that bears this liability, as it is liable to Mellon under the Third-Party Complaint. Additionally, should O'Mara prevail against Mellon, it is Heritage that bears this liability, as it is also liable to Mellon under the Third-Party Complaint for this aspect of the case.

\* \* \*

For the reasons set forth above, with respect to the Motions for Summary Judgment of Mellon, Equibank and Peoples against O'Mara, these motions are denied. In support of these motions the banks ignore the fact that the GSD indorsement is on the checks, which indorsement, as noted above, changes the situation dramatically by preventing all subsequent transferees

---

**6.** By the terms of § 4207, the ultimate burden is placed on the first bank honoring the instrument. *See also, Commonwealth Federal Savings*

& *Loan Ass'n v. First National Bank of New Jersey,* 513 F.Supp. 296, 303 (E.D.Pa.1979).

from becoming holders and destroying negotiability. Therefore, this Court cannot grant the requests for summary judgment of the Defendant banks against O'Mara.

Similarly, Heritage's Motion for Summary Judgment against O'Mara (joined by Mellon and Peoples) is denied. Initially, this Court notes that there is no direct claim running between O'Mara and Heritage. Further, although as Heritage asserts, the checks at issue did contain the indorsement of Heritage, the fact that the GSD indorsement precedes the Heritage indorsement alters the situation, as set forth above. Accordingly, for these reasons it would be inappropriate to grant the Motion for Summary Judgment by Heritage (or Mellon or Peoples) against O'Mara, and the motion is denied.[7]

For the reasons set forth above, Equibank and Peoples' Motion for Summary Judgment against Mellon is granted. Therefore, with respect to the Crossclaims of Equibank and Peoples against Mellon, judgment is entered in favor of Peoples and Equibank against Mellon. Accordingly, in the event O'Mara prevails against Peoples and/or Equibank, Mellon is liable for any such judgment.

Also for the reasons set forth above, Mellon's Motion for Summary Judgment against Heritage is granted.[8] Therefore, with respect to the Third-Party Complaint of Mellon against Heritage, judgment is entered in favor of Mellon and against Heritage. Accordingly, in the event that O'Mara prevails against Mellon (and/or Peoples and/or Equibank since judgment is entered against Mellon on the Equibank and Peoples Crossclaims), then Heritage is liable to Mellon for any such judgment.

*The O'Mara Brothers' Motion to Dismiss the Fourth-Party Complaint*

The Fourth-Party Complaint seeks indemnification and/or contribution from the O'Mara brothers in their individual capaci-

ties for allegedly failing to exercise due care as officers of O'Mara.

The O'Mara brothers, in moving to dismiss the Fourth-Party Complaint, do not dispute that they have certain contacts with the Commonwealth of Pennsylvania. However, they assert in affidavits that these activities, apart from occasional social ones (which are not relevant here), are conducted by them in their capacities as corporate officers of O'Mara. The O'Mara brothers assert that these contacts are insufficient to permit this Court to invoke personal jurisdiction over them on a "transacting business" theory. (The O'Mara brothers do not address the "tortious injury" theory.)

In response, Heritage essentially concedes that this Court cannot assert jurisdiction over the O'Mara brothers on the theory of "transacting or doing business", but asserts that jurisdiction may be exercised over the O'Mara brothers on a "tortious injury" theory.

\*　　\*　　\*

■ In determining whether it is proper to exercise *in personam* jurisdiction over a nonresident, the district court must address the matter in a two-step process: (1) it must determine whether the activity of the nonresident falls within the ambit of the long-arm statute; and if so, (2) the Court must then determine whether this activity comports with the due process requirements of the Constitution. *See, e.g., Columbia Metal Culvert Co. v. Kaiser Industries Corp.*, 526 F.2d 724 (3d Cir.1975).

Pennsylvania's long-arm statute, 42 PA. CONS.STAT. § 5322 (Purdon 1981), provides in pertinent part as follows:

(a) General rule.—A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... who acts directly or by an agent, as to a cause of action or other matter arising from such person

---

7. The court need not and will not address Heritage's argument regarding the corporate resolution as it would not alter the result.

8. In doing so, this Court rejects Heritage's argument that there are certain factual issues raised by its affirmative defenses which should pre-

clude the granting of summary judgment since it did not submit any factual substantiation; FED.R.CIV.P. 56(e) does not permit the party opposing the motion to "simply rest upon the mere allegations or denials of his pleadings".

. . . .

(4) *Causing harm or tortious injury in this Commonwealth* by an act or omission outside this Commonwealth.

(Emphasis added.)

■ Conspicuously absent from the Fourth-Party Complaint, in which Heritage seeks to recover against the O'Mara brothers on the basis of "tortious injury," is any allegation that the alleged actions of the O'Mara brothers "caus[ed] harm or tortious injury in this Commonwealth." Without any such allegations, the Fourth-Party Complaint is fatally deficient. In its present form the Fourth-Party Complaint does not permit the Court to ascertain whether the conduct complained of falls within the ambit of the long-arm statute. *Cf., Miller v. American Telephone & Telegraph Co.*, 394 F.Supp. 58 (E.D.Pa.1975), *aff'd without published opinion*, 530 F.2d 964 (3d Cir.1976). Accordingly, the Motion to Dismiss the Fourth-Party Complaint is granted and the Fourth-Party Complaint is dismissed. However, if Heritage so desires, it may file an amended fourth-party complaint within ten days of this Opinion and Order. Failure to do so by this time will constitute a waiver.

An appropriate Order shall issue.

### ORDER

And now, this 16th day of January, 1985, in conformity with the foregoing Opinion, it is hereby ORDERED that the Motion for Summary Judgment by Mellon, Equibank and Peoples against Plaintiff is DENIED. It is further ORDERED that the Motion for Summary Judgment by Heritage (joined by Mellon and Peoples) against Plaintiff is DENIED.

It is further ORDERED that the Motion for Summary Judgment by Equibank and Peoples against Mellon is GRANTED. It is further ORDERED that the Motion for Summary Judgment by Mellon against Heritage is GRANTED.

Accordingly, with respect to the Cross-claims of Equibank and Peoples, Judgment is ENTERED in favor of Peoples and Equibank and against Mellon. Therefore, in the event that Plaintiff prevails against Peoples and/or Equibank, then Mellon is liable for any such judgment. Further, with respect to the Third-Party Complaint of Mellon against Heritage, Judgment is entered in favor of Mellon and against Heritage. Therefore, in the event that Plaintiffs prevail against Mellon (and/or Peoples and/or Equibank since Judgment is entered against Mellon on these two banks' Cross-claims), then Heritage is liable for any such judgment.

It is further ORDERED that the Fourth-Party Defendants' Motion to Dismiss the Fourth-Party Complaint is GRANTED and the Fourth-Party Complaint is DISMISSED. However, if Heritage so desires, in conformity with this Opinion, it may file an amended fourth-party complaint within ten days of this Opinion and Order. Failure to do so by this time will constitute a waiver.