Nancy AMES, Appellant,

v.

GREAT SOUTHERN BANK, Appellee.

No. 01–820336–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

June 30, 1983.
Rehearing Denied Aug. 4, 1983.

Van McFarland, Houston, for appellant.

Carl T. Schultz, Houston, for appellee.

Before JACK SMITH, DUGGAN and LEVY, JJ.

## OPINION

JACK SMITH, Justice.

This is a suit to recover the proceeds of a certificate of deposit. The trial was to a jury, and based upon on its answers to the issues, the trial court entered judgment that the appellant, Nancy Ames, take nothing against the appellee, Great Southern Bank. On appeal, the appellant raises four points of error and the appellee raises two cross-points.

Ms. Ames filed suit against Great Southern alleging that the bank unlawfully cashed a $20,276.90 certificate of deposit, which she owned as her separate property. She alleged that the proceeds of the C.D. were incorrectly transferred to her corporate account and then withdrawn by her bookkeeper and paid to a corporation owned by her husband. She alleged that she had not authorized these transactions and had no knowledge of the occurrence until several months later. Finally, she alleged that she had not been compensated for the loss by the bank or any other person. She prayed for recovery of the proceeds from the C.D., exemplary damages, and attorney's fees.

Great Southern answered and alleged that it had relied upon the apparent authority of the appellant's agent in handling the transaction. It stated that the transaction was fully within the established course of

dealing between the parties and it alleged that Ms. Ames had sustained no loss as a result of its actions. The bank asserted that the proceeds from the C.D. had been deposited in Ms. Ames' business account and it had not paid the proceeds to a third party. Alternatively, Great Southern alleged that the funds had been repaid to Ms. Ames by her husband in a property settlement agreement entered into pursuant to a divorce. Great Southern joined Ms. Ames' former husband and his closely held corporation as parties to the suit. It also raised a cross-claim against the appellant for attorney's fees, alleging that the suit had been brought in bad faith and for purposes of harassment. At the close of the evidence, the appellee dismissed the appellant's husband and his corporation as parties to the law suit.

In answer to special issues, the jury found that Ms. Ames was not negligent in her dealings with Great Southern concerning the certificate of deposit, but found that she had been reimbursed for the loss by her husband. Upon Ms. Ames' motion this latter finding was disregarded by the trial court. The jury further found that Great Southern did not fail to exercise ordinary care in its dealings with Ms. Ames regarding the certificates of deposit; that Great Southern did not convert the certificates of deposit; that Ms. Ames' bookkeeper had apparent authority to cash the certificates of deposit; and that Great Southern did not act "in good faith and in the direct performance of an act for Golf Course Construction Company, Inc. and at its direction." Golf Course Construction Company, Inc. was the business corporation owned by the appellant's former husband, B.J. Riviere.

Ms. Ames testified that she had two accounts at the appellee bank. One account was a personal account on which she was the only authorized signatory. The other account was a business account to service her corporation, Nancy Ames Productions. Ms. Ames, her bookkeeper Ms. Dealy, and one other person were authorized to sign on this account. Mr. Riviere, her husband, was not authorized to sign on either of these accounts.

In August, 1974, Ms. Ames used separate property funds to purchase the $20,-000 C.D. in question. The C.D. was a 90-day maturity certificate and was renewed in November, 1974 by Ms. Dealy in the amount of $20,276.90.

Ms. Ames testified that she was out of town in January, 1975, when the $20,276.90 certificate was cashed. She stated that she had not authorized anyone to cash it, and was not even aware that it had been cashed until several months later. She discovered what had occurred after her divorce proceedings had begun, when Ms. Dealy asked her why she had given her husband "that money". Ms. Ames asked Ms. Dealy what she was referring to, and Ms. Dealy answered, "that C.D.". Ms. Ames discovered that her husband had told Ms. Dealy that Ms. Ames had given him her permission to use the C.D. to repay a loan. He instructed Ms. Dealy to cash the C.D. and to deposit $10,000 into the Nancy Ames Production account and to obtain another C.D. with the balance. Ms. Dealy was then to write a check on the Nancy Ames Production account for $10,000 payable to Golf Course Construction Co., Mr. Riviere's business. Ms. Ames reiterated that Ms. Dealy was not authorized to cash the C.D. and did not have authority to transfer funds between the two accounts.

On cross-examination, Ms. Ames stated that she viewed Ms. Dealy's function as a bookkeeper for her business, and depended upon her to handle her corporate financial affairs. She stated that she had not held out that Ms. Dealy was her agent for personal finances.

Ms. Ames testified that while she and her former husband were married, they had extensively remodeled their home. This resulted in the house being two or three times larger than its original size and the two of them being heavily in debt. She testified at trial that she personally obtained the C.D. but her deposition testimony was that she did not know who had obtained it. She further testified that she

personally had cashed another C.D. for $3,200, but she could not read the signature on the back. Finally, Ms. Ames testified that the funds for which she was suing were specifically excepted from the property settlement agreement between herself and her husband.

Mr. Brooks Boyd, an officer of the bank, was called as an adverse party by the appellant. He testified that the bank did not have a written policy requiring endorsement of certificates of deposit. He stated that he did not have personal knowledge of when the C.D.'s had been cashed. He further stated that he first heard that the C.D.'s were cashed when the appellant called him and complained. He then checked into the matter and discovered that the funds from the C.D.'s were deposited in the appellant's business account and that checks were written by Ms. Dealy on that account payable to the appellant's husband's business account.

Mr. Boyd asserted that Ms. Dealy handled 90% of the appellant's and Mr. Riviere's banking. However, Mr. Boyd could not testify to any activity conducted by Ms. Dealy which involved the appellant's personal account other than the one renewal of a C.D.

In regard to the transaction which was the subject of this suit, Mr. Boyd admitted that the C.D.'s were cashed without the appellant's "official" endorsement. The endorsement appearing on the C.D. was "credited to account of the within named payee. Absence of endorsement guaranteed. Great Southern Bank." Mr. Boyd reiterated that a C.D. in the amount of $20,276 was cashed at the direction of Ms. Dealy on January 24, 1975. He further stated that the proceeds of that C.D. were placed in the appellant's business account with the exception of $10,000 which was placed in another C.D. issued to the appellant. The $10,000 C.D. was cashed at the direction of Ms. Dealy on January 31, 1976 and the proceeds placed in the appellant's business account. He stated that the bank did not know that the C.D.'s were the appellant's separate property.

Mr. Riviere, the appellant's former husband, was called by the bank to testify. He stated that he had instructed Ms. Dealy to cash the C.D.'s and to write the checks payable to his company. He testified that he did so after the appellant gave him permission for this transaction during a phone call. He said that Ms. Dealy had been his bookkeeper and that the appellant also hired her to handle her personal and business banking.

Mr. Riviere explained that the reason he needed to use the C.D.'s was that he and his company were in heavy financial difficulty. He stated that this difficulty arose because he made loans from his company to cover extensive remodeling of his and the appellant's home. These loans were reflected on the company's books. He further testified that his wife never confronted him about using the money and that he thought that he had reimbursed his wife in their property settlement at the time of their divorce.

Ms. Dealy also testified for the appellee. She stated that she purchased the C.D. for $20,000 and cashed it at Mr. Riviere's instructions. She believed that she was acting in accordance with the appellant's wishes. She stated that Ms. Ames instructed her before Ms. Ames went to Florida that, "If he needs money, give it to him."

Ms. Dealy stated that she consistently dealth with Karen Elkins, Mr. Boyd's secretary at the bank, when handling the banking requirements of her employers. She further testified as to the transfer of money between the accounts of Mr. Riviere and Ms. Ames at the Great Southern Bank. She stated that the appellant transferred funds between the accounts less than ten times. She never saw a transfer of funds from the appellant's personal account to the Golf Course Construction Co. account, but she remembered transfers between the Nancy Ames Productions account and the Golf Course Construction account.

Karen Elkins, Mr. Boyd's secretary, testified on behalf of the bank. She stated that she dealth with Suzanne Dealy when

she worked on the accounts of the Nancy Ames Production and Golf Course Construction, Inc. Her testimony corroborated the testimony of the other witnesses concerning the cashing of the C.D.'s. Ms. Elkins stated that the only person she dealt with regarding the appellant's banking requirements was Ms. Dealy. She was under the impression that Ms. Dealy had the authority to sign on the appellant's personal account. She further stated that this impression came from the number and frequency of banking errands which Ms. Dealy performed for the appellant.

The appellee bank also presented expert testimony to the effect that the bank exercised ordinary care under the facts of the instant case. Each party also presented evidence concerning attorney's fees.

The appellant initially asserts that the trial court erred in overruling her motion for a directed verdict, and motion for judgment non obstante veredicto because the defendant failed to follow the plaintiff's instructions on the certificate of deposit. She contends that the words "properly endorsed" on the face of the C.D. required the bank, as a matter of law, to obtain the appellant's signature on a certificate before cashing it. In support of her position she cites *Fultz v. First National Bank of Graham*, 388 S.W.2d 405 (Tex.1965), and *Lone Star Beer, Inc. v. First National Bank of Odessa*, 468 S.W.2d 930 (Tex.Civ.App.—El Paso 1971, no writ). These cases are distinguishable from the instant case in that they deal with restrictive endorsements while the instant case involves the complete absence of an endorsement.

The appellant alleged three theories as a basis of recovery, i.e. conversion, negligence, and contract. The jury found that the bank did not convert the certificates of deposit, that the bank did not fail to exercise ordinary care in its dealings with Ms. Ames, and that Ms. Dealy had apparent authority (from the appellant) to cash the two certificates of deposit that were placed in Mr. Riviere's business account. Notwithstanding these negative findings to her issues, the appellant asserts that the certificate of deposit was not properly endorsed and that she is entitled to recover her damages as a matter of law. We disagree.

■ The requirement on the face of the C.D. that the bank obtain a proper endorsement prior to cashing the C.D. was a condition precedent to the delivery of the proceeds. However, performance of conditions precedent can be waived by words or deeds or both. *Atomic Fuel Extraction Corporation v. Slick's Estate*, 386 S.W.2d 180 (Tex.Civ.App.—San Antonio 1964, writ ref'd, n.r.e.); *Braugh v. Phillips*, 557 S.W.2d 155 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd, n.r.e.). In the instant case there is evidence that on at least two occasions the bank either renewed or cashed a C.D. which was in the appellant's name without the appellant's endorsement. There is also evidence that the appellant was aware of these transactions. This is sufficient evidence to submit an issue to the jury on whether Ms. Ames waived her endorsement on the C.D. by clothing Ms. Dealy with apparent authority to renew or cash the C.D.'s involved in the instant case. The appellant's first ground of error is overruled.

In her second point of error, the appellant asserts that the trial court erred in overruling her motion for judgment non obstante veredicto because the bank failed to plead and prove a defense under the Texas Business and Commerce Code, which code requires the bank to pay to the owner the proceeds of the certificate of deposit.

■ Both parties to this appeal have cited the Texas Business and Commerce Code (Uniform Commercial Code) to support their respective positions. This code is applicable to the instant case because a certificate of deposit is a form of a negotiable instrument as defined in § 3.104.

■ The Code assumes that there will be an endorsement on a negotiable instrument by the principal or authorized representative. See § 3.403. However, in § 4.205, a depository bank which has taken an item for collection may supply any endorsement of the customer which is necessary to title

unless the item contains the words, "Payees endorsements required" or the like. This section does not apply for two reasons. First, the appellee is not a depository bank. Second, the C.D. in the instant case required a proper endorsement. Other sections of the Code cited by the parties are also not applicable to the instant fact situation.

The parties to this cause of action have deviated from the normal course of business in a manner not contemplated by the Code. Under these circumstances we are of the opinion that the appellee was entitled to assert defenses which would usually be available under contract law. We hold that the defense of apparent authority was properly allowed under the facts of the instant case. The appellant's second point of error is overruled.

In her third point of error, the appellant alleges that there was no evidence or insufficient evidence that she had held out Ms. Dealy as her personal agent and that the bank had relied on such apparent authority. When the evidence is viewed in the light most favorable to the jury's verdict, there is sufficient evidence to sustain the jury's findings.

The appellant's testimony regarding whether she obtained certificates of deposit is not clear and direct. She admitted that she did not know who obtained the C.D.'s. On the other hand, Ms. Dealy's testimony is direct and unqualified. She stated that she obtained the C.D. for $20,000 and another C.D. for over $3,000. She further testified, as did the appellant, that she had renewed the C.D. in question on one occasion. She also testified that she cashed both the $3,000 and $20,000 C.D.'s. No endorsement was required of Ms. Dealy by the bank on any of these occasions.

Although the appellant stated that she did not give her permission to the cashing of the $20,000 C.D., she was aware that Ms. Dealy had renewed the certificate of deposit and that Ms. Dealy had cashed the $3,000 C.D. and placed the proceeds in her husband's company account. In addition, there was also testimony that the appellant had given Ms. Dealy instructions to give Mr. Rivere the money if he needed it.

Apparent authority arises when acts of the principal mislead third parties into the belief that the agent is acting on the principal's behalf. This is essentially agency by estoppel. Estoppel can arise by silence or inaction as effectively as by words or action where there is a duty to speak or to act. *Traylor v. Gray,* 547 S.W.2d 644 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd, n.r.e). When the evidence is viewed in the light most favorable to the jury's verdict, we hold that there was sufficient evidence to support the appellee's theory of apparent authority. The appellant's third point of error is overruled.

In her fourth point of error, the appellant alleges that the trial court erred in overruling her motion for a new trial because there are irreconcilable conflicts in the jury's answers to the special issues.

She first contends that there is a conflict between the jury's answers to Special Issues No. 4, No. 7, and No. 8. In Special Issue No. 4, the jury found that the plaintiff was not negligent in her dealings with the bank concerning the certificates of deposit. In Special Issue No. 7, the jury found that Ms. Dealy was not authorized by the appellant to cash the certificates of deposit. In Special Issue No. 8, the jury found that Ms. Dealy had apparent authority to cash the certificates of deposit.

The appellant asserts that "the jury probably mistakenly though the inquiry was whether Dealy reasonably thought she had authority and wanted to find she had, as it had come out that the bank had indicated it might sue Dealy, if it lost." The appellant presented no affidavits or live testimony of jurors at the motion for new trial which would corroborate this theory. We find no conflict with these issues when read in sequence, i.e. the appellant was not negligent in her dealings with the bank concerning the certificate of deposit, and had not authorized Ms. Dealy to cash them. However, the appellant, as principal, either

intentionally or by inaction clothed Ms. Dealy with apparent authority to cash the certificates of deposit. This appears to be a logical reconciliation of the jury's answers to the issues, especially when the trial court's definition of apparent authority is considered. That definition is as follows:

Apparent authority arises where the conduct of the principal, either intentionally or by want of ordinary care, is such to lead a reasonable prudent person, using diligence and discretion to suppose that the agent has the authority he purports to exercise.

Since there is no evidence to support the appellant's theory of conflict between Special Issues 4, 7, and 8, and there is a logical manner in which the answers can be reconciled, we overrule the appellant's first contention under point or error four.

The appellant also contends that there is a conflict between the jury's answers to Issues No. 2 and 14. In Special Issue No. 2, the jury found that the bank did not fail to exercise ordinary care in its dealings with the appellant in connection with the certificates of deposit. Special Issue No. 14 is as follows:

*Special Issue No. 14*

Do you find from a preponderance of the evidence that Great Southern Bank, with respect to the action it took regarding Plaintiff's certificates of deposit, acted in good faith and in the direct performance of an act for Golf Course Construction Co., Inc., and at its direction?
Answer: "We do" or "We do not".
ANSWER: __We do not.__

■ A close reading of Special Issue No. 14 reveals that there were at least three questions asked in the issue. First, the issue inquired whether the bank had acted in good faith. Second, it inquired as to whether the bank acted in the direct performance of an act for Golf Course Construction, Co., Inc. Third, it inquired whether the bank acted at the direction of Golf Course Construction Co., Inc.

The jury's finding to Special Issue No. 2 that the bank exercised ordinary care in its dealings with appellant is indicative that the jury found that the bank had acted in good faith. To ask the question again in Special Issue No. 14 was redundant. As to the last two questions asked in Special Issue No. 14, a review of the record reveals that there was no evidence that the bank acted for or at the direction of Golf Course Construction Co., Inc. in its dealings with the appellant and her certificates of deposit. Hence, the only answer the jury could give to Special Issue No. 14 was "We do not". Special Issue No. 14 was mere surplusage and the trial court should have disregarded it. Appellant's fourth point of error is overruled.

The appellee, in cross point of error number one, alleged that the trial court erred when it disregarded the jury's answer to Special Issue No. 15. In Special Issue No. 15 the jury found that the appellant was reimbursed by her husband or Golf Course Construction Co., Inc. for the $20,000 from the certificates of deposit.

■ The evidence reveals that the proceeds of the C.D.'s went into Ms. Ames's corporate account, then to her husband's corporate account, and then was used to reduce the community debt of $20,000. There is no evidence that the appellant's separate estate was ever reimbursed for the certificate of deposit. Although there is evidence that she benefited from the discharge of the $20,000 community debt, that was not the question that was submitted to the jury. The appellee's first cross-point is overruled.

In its second cross-point, the appellee contends that the trial court erred when it declined to award the appellee reasonable attorney's fees for its defense of the Deceptive Trade Practices count asserted by the appellant.

The record reflects that the appellee specially excepted to the appellant's Deceptive Trade Practices claim, and the trial court upheld its special exceptions and ordered the Deceptive Trade Practices claim sticken from the appellant's pleadings.

Texas Business and Commerce Code § 17.50 (c) requires the court to award reasonable attorney's fees to the defendant upon a finding that the cause of action was brought for purposes of harassment or bad faith. The trial court in the instant case specifically found that the suit was not brought in bad faith. There was no finding by the trial court or by the jury that the suit was brought for purposes of harassment. The appellant's action in asserting a cause of action under the Deceptive Trade Practices Act does not compel a finding of bad faith and does not rise to the level of bad faith actions found by other courts to entitle a defendant to attorney's fees. *See, Brunstetter v. Southern,* 619 S.W.2d 557 (Tex.Civ.App.—San Antonio 1981, writ ref'd, n.r.e.); Goodfriend & Lynn, *Of White Knights and Black Knights: An Analysis of the 1979 Amendments to the Texas Deceptive Trade Practices Act,* 33 S.W.L.J. 941 (1979). The appellee's second cross-point is overruled.

The judgment of the trial court is affirmed.