Nancy AMES, Petitioner,

v.

GREAT SOUTHERN BANK,
Respondent.

No. C–2398.

Supreme Court of Texas.

June 6, 1984.

Rehearing Denied July 11, 1984.

McFarland & Tondre, Van E. McFarland, Houston, for petitioner.

Green, Downey, Patterson & Schultz, Carl T. Schultz, Houston, for respondent.

KILGARLIN, Justice.

This is a suit to recover the proceeds of a certificate of deposit, or, as it is sometimes called, a "CD." It presents the novel question whether, under the Uniform Commercial Code, a bank is liable for failure to secure the endorsement of the payee of a CD before cashing in the certificate. The trial court, based on answers to special issues, rendered judgment that Nancy Ames take nothing from Great Southern Bank, Houston, Texas. The court of appeals affirmed. 672 S.W.2d 500. We affirm that part of the judgments of the courts below which denied attorney's fees to Great Southern Bank. We reverse the remainder of these judgments and render judgment that Ames recover the proceeds of her certificate.

Nancy Ames had two accounts at Great Southern Bank. One, styled "Nancy Ames Riviere," was a personal account on which she was the only authorized signer. The other account, styled "Nancy Ames Productions," was to service her corporation. Ames, her bookkeeper, Suzanne Dealy, and another individual, not involved in this suit, were authorized to sign on the business account. B. Jay Riviere, Ames' husband, was not authorized to sign on either account.

In August 1974, Ames used her separate funds to purchase a $20,000 CD. Upon its maturity ninety days later, Ames authorized Dealy to "rollover" this certificate into a new CD for $20,276.90. This renewal CD no. 3892, was payable to "Nancy Ames Riviere." It had on its face the printed term that the bank would pay only "upon surrender of this certificate properly endorsed."

While Ames was out of town in January 1975, Dealy cashed certificate no. 3892, although Ames had not authorized her to do so. Ames first learned of this transaction several months later during divorce proceedings. At the time of the transaction on January 24, 1975, Riviere had informed Dealy, who also served as a bookkeeper for Riviere's business interests, that Ames had given him permission to use the proceeds of the CD to repay a loan. Riviere instructed Dealy to cash the certificate, obtain a $10,000 CD payable to "Nancy Ames Riviere," and deposit the balance into the Nancy Ames Productions account. This new certificate (no. 4107) likewise provided

that the bank would not pay the CD proceeds unless it was properly endorsed. On Riviere's orders, Dealy then wrote a check from the Nancy Ames Productions account for $10,000, payable to Golf Course Construction Company, Riviere's personal business. On February 3, Riviere instructed Dealy to cash the new certificate, no. 4107, deposit its proceeds into Ames' corporate account, and write a check from that account for $10,000, payable to Riviere's company. Dealy carried out these instructions. Ames did not sign or endorse either CD at the time they were offered for negotiation.

Ames sued Great Southern, alleging that CD no. 3892 was unlawfully cashed by Great Southern as she had not authorized this transaction nor did she have knowledge of its occurrence. Great Southern replied that it had relied upon the apparent authority of Dealy as an agent for Ames in handling the transaction. It alleged that the transaction was fully within the established course of dealings between the parties and that Ames had sustained no loss as a result of the bank's actions.

In answer to special issues, the jury found that Great Southern did not convert the CD and that Great Southern did not fail to exercise ordinary care in its dealings with Ames regarding the certificates. However, the jury did find that Great Southern did not act in good faith. Additionally, the jury acquitted Ames of failing to exercise ordinary care in her dealings with the bank concerning these CD's. Regarding Suzanne Dealy, the jury found that she was not authorized by Ames to cash either the original $20,276.90 certificate or certificate no. 4107. However, the jury did find that Dealy had apparent authority to cash the certificates.[1] Based on these findings, the trial court rendered judgment against Ames.

The basis of the court of appeals' affirmance was that the requirement that the bank obtain a proper endorsement prior to

cashing the CD could be waived by words or deeds or both. Having found evidence that the bank, on Dealy's instructions, had renewed or cashed certificates payable to Ames on at least two prior occasions, the court held Ames had clothed Dealy with apparent authority, thereby waiving the endorsement requirement.

■ Ames argues that the trial court should have granted her motion for directed verdict or her motion for judgment n.o.v. because Great Southern failed to obtain her endorsement on the CD. A certificate of deposit is a bank's written acknowledgement of a special deposit of money which the bank promises to pay to the order of a designated person, or to bearer. TEX.BUS.& COMM.CODE ANN § 3.104(b)(3) (Vernon 1968). The provisions of a certificate of deposit form a contract which creates the relationship of debtor and creditor between the bank and its depositor. *Mesquite State Bank v. Professional Investment Corp.*, 488 S.W.2d 73 (Tex.1972). Such contract determines the manner in which the funds of the depositor may be withdrawn and is subject to the law of contracts. *Frost National Bank v. Nicholas and Barrera*, 534 S.W.2d 927 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.).

■ The certificate of deposit, in this instance, formed such debtor/creditor relationship between Ames and Great Southern. It required a proper endorsement as a condition precedent to the bank's obligation to deliver the proceeds to Ames. Performance of a condition precedent, however, can be waived or modified by the party to whom the obligation was due by word or deed. *See Atomic Fuel Extraction Corp. v. Slick's Estate*, 386 S.W.2d 180 (Tex.Civ.App.—San Antonio), *writ ref'd n.r.e. per curiam*, 403 S.W.2d 784 (1965). The initial question which must be addressed before considering the bank's actions regarding the CD thus becomes whether performance

---

1. The special issue concerning apparent authority included the definition that such authority "arises where the conduct of the principal, either intentionally or by want of ordinary care,

is such as to lead a reasonably prudent person, using diligence and discretion, to suppose that the agent has the authority he purports to exercise."

of the condition precedent was waived by mutual agreement of Great Southern Bank and Ames' agent, Dealy. *See Behring Intern. v. Greater Houston Bank,* 662 S.W.2d 642 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd).

■ Apparent authority is the power of an agent to "affect the legal relations of another person by transactions with third persons." Restatement (Second) Of Agency § 8 (1958). Apparent authority in Texas is based on estoppel. It may arise either from a principal knowingly permitting an agent to hold herself out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority she purports to exercise. *Rourke v. Garza,* 530 S.W.2d 794 (Tex.1975); *Chastain v. Cooper & Reed,* 152 Tex. 322, 257 S.W.2d 422 (1953). An agent acting within the scope of her apparent authority binds a principal as though the principal herself had performed the action taken. *Biggs v. United States Fire Ins. Co.,* 611 S.W.2d 624 (Tex.1981).

■ A prerequisite to a proper finding of apparent authority is evidence of conduct by the principal relied upon by the party asserting the estoppel defense which would lead a reasonably prudent person to believe an agent had authority to so act. *Traylor v. Gray,* 547 S.W.2d 644 (Tex.Civ. App.—Corpus Christi 1977, writ ref'd n.r. e.); *Ybanez v. Anchor Constructors, Inc.,* 489 S.W.2d 730 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n.r.e.). Dealy, as the bookkeeper for Nancy Ames Productions, handled many of the corporations banking transactions. She also had authority to sign on the corporation's checking account. However, only Ames could make withdrawals from her own personal account. The record reveals only one uncontroverted prior transaction where Dealy is alleged to have acted on behalf of Ames personally. We, therefore, hold there is no evidence of a pattern of conduct by Ames such as would lead a reasonable bank using due diligence to believe Suzanne Dealy had authority to deal with Ames' personal bank account or her personal certificate of deposit.

■ Having determined Suzanne Dealy was not clothed with apparent authority to modify or waive the contractual relation between Great Southern and Ames, Great Southern had a duty to authenticate the endorsements on the instrument presented to it. *Tubin v. Rabin,* 389 F.Supp. 787 (N.D.Tex.1974), *aff'd,* 533 F.2d 255 (5th Cir.1976). This is because commercial expediency and the U.C.C. place the burden on the first bank in the collection chain to insure that endorsements are authentic as it is this bank which is in the best position to make this discovery. *Commonwealth Federal Savings & Loan Assoc. v. First National Bank of New Jersey,* 513 F.Supp. 296 (E.D.Pa.1979); and *Thornton & Co. v. Gwinnett Bank & Trust Co.,* 151 Ga.App. 641, 260 S.E.2d 765 (1979). A bank's payment of an instrument on a missing endorsement results in conversion of the instrument. Tex.Bus. & Com.Code § 3.419(a)(3). *Federal Deposit Ins. Corp. v. Marine Nat'l Bank of Jacksonville,* 431 F.2d 341 (5th Cir.1970); *Commonwealth,* 513 F.Supp. at 300. Great Southern's failure to follow its own depository contract by obtaining Ames' endorsement resulted in such conversion by Great Southern of Ames' certificates. Therefore, since a bank which pays funds in breach of a contract on a missing endorsement is liable for the face amount of the instrument, Tex. Bus. & Comm.Code Ann. § 3.419(b) (Vernon 1968), we hold Great Southern is liable to Nancy Ames for the full value of the certificate of deposit.

As a final matter, Great Southern, by cross-point, asserts that the court of appeals erred in not reversing the trial court's refusal to award the bank attorney's fees under Tex.Bus. & Com.Code § 17.50(c) (Vernon Supp.1984), which reads as follows:

> On a finding by the court that an action under this section was groundless and brought in bad faith, or brought for the purpose of harassment, the court shall

award to the defendant reasonable and necessary attorney's fees ....

■ Ames' claim for relief under the D.T.P.A. was excepted to by Great Southern because of her failure to allege she was a consumer. The trial court sustained the exceptions. Thereafter, Ames abandoned her D.T.P.A. claim. The trial court made no finding that such claim had been asserted in bad faith or for purposes of harassment. Absent such findings, the court of appeals was correct in overruling the bank's cross-point regarding attorney's fees. *See Jones v. Smith,* 649 S.W.2d 29 (Tex.1983).

We affirm that part of the judgments of the courts below which denied attorney's fees to Great Southern Bank. We reverse the remainder of the judgments of these courts and render judgment that Ames recover $20,276.90 with both pre-judgment and post-judgment interest.