United States Court of Appeals,

Fifth Circuit.

Nos. 91-5752, 91-5813.

Lee TEMPLE and Equitable Variable Life Insurance Company, Plaintiffs,

Lee Temple, Plaintiff-Appellant.

v.

FDIC, as Receiver of Mbank Alamo, N.A., Commercial National Bank, and Groos Bank, N.A., Defendants-Appellees.

Lee TEMPLE and Equitable Variable Life Insurance Co., Plaintiffs,

Lee Temple, Plaintiff-Appellant,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, etc., et al., Defendants,

Federal Deposit Insurance Corporation, as Receiver of MBank Alamo, N.A., Commercial National Bank and Groos Bank, N.A., Defendants-Appellees.

April 13, 1993.

Appeals from the United States District Court for the Western District of Texas.

Before WISDOM and DUHÉ, Circuit Judges, and HAIK, District Judge:[*]

HAIK, District Judge:

e issue before the Court is whether the victim of a forgery can recover from the collecting bank or his own bank, if he has settled his claim against the forger for the full amount of the check. The District Court held that he could not, and granted judgment on the defendants' behalf. We affirm.

On October 3, 1986, plaintiff Lee Temple issued a check to EVLICO (Equitable Variable Life Insurance Company) for $250,000. He intended to purchase a single premium life insurance policy. Keith Elolf, an EVLICO insurance agent, endorsed the back of the check, "EVLICO by Keith A. Elolf," and deposited it in his own business account at his own bank, Commercial National Bank. (Commercial has since merged and is known as Groos Bank). The endorsement was made without the authority of EVLICO.

---

[*]District Judge of the Western District of Louisiana, sitting by designation.

Commercial stamped the back of the check "(p)ay at any bank, banker, or trust company, prior endorsement guaranteed".  It was thereafter cleared through Frost National Bank, which stamped the back of the check, "(p)ay at any bank, Frost National Bank, San Antonio, Texas."  Frost then forwarded the check to MBank, the drawee bank, for payment.  MBank marked the check paid and debited the $250,000 from Temple's account.

Temple was never issued an insurance policy for the check he had written.

In response to a demand letter which Temple sent to Elolf, Elolf tendered to Temple a check for $10,000 as payment for interest which the $250,000 insurance policy would have earned had it been in effect.  On November 2, 1987, Temple and EVLICO entered into a settlement agreement, whereby Temple agreed to drop his claims against EVLICO for $300,000.

On November 30, 1988, Temple filed suit against MBank (now in Receivership through the FDIC), Commercial (now Groos), and Elolf, individually, seeking the $250,000 based on several theories of breach of contract.

On May 17, 1990, the District Court granted the FDIC's motion for summary judgment.  It found that because the FDIC was not the collecting bank, it could not be held liable to Temple for any damages associated with the check Elolf deposited into his business account.  Commercial, the first bank in the collecting process, had the burden of determining if the endorsement was authentic since it was in the best position to make that determination.  As such, it was required to bear the loss associated with a failure to do so.  *Ames v. Great Southern Bank,* 672 S.W.2d 447 (Tex.1984).

On June 20, 1991, the District Court held that Groos Bank and Commercial Bank were entitled to Judgment as a Matter of Law because of Temple's $300,000 settlement with EVLICO and the additional $10,000 payment by Elolf.  He ordered a *sua sponte* judgment in their favor.  The Fifth Circuit has long recognized that a district court may *sua sponte* grant summary judgment for a nonmoving party provided all of the procedural safeguards of Rule 56 are followed.  *McCarty v. United States,* 929 F.2d 1085, 1088 (5th Cir.1991); *British Caledonian Airways v. First State Bank,* 819 F.2d 593, 595 (5th Cir.1987).  We therefore affirm the actions of the District Court under these factual circumstances.

In his order, the District Court rejected Temple's argument that *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414 (Tex.1984), was applicable. In *Duncan,* a surviving spouse and her minor children brought a wrongful death action against the manufacturer of the airplane, Cessna Aircraft Company, when her husband, James Parker, was killed in an airplane crash. Benjamin Smithson owned the plane and was giving Parker flying lessons at the time of the crash. Cessna sought contribution from Smithson's estate based on proof that his pilot negligence caused the accident. The Texas Supreme Court held that in product liability cases, a defendant was allowed to obtain a jury allocation of the plaintiff's damages according to the plaintiff's, defendants', and third parties' respective percentages of causation of those damages. The Court found that the one recovery rule enunciated in *Bradshaw v. Baylor University,* 126 Tex. 99, 84 S.W.2d 703 (Tex.1935) did not apply. Each defendant could settle his portion of the suit, but that settlement did not affect the amount of harm caused by the remaining defendant. The non-settling defendant's liability and the plaintiff's recovery would be reduced by the percent share of causation assigned to the settling tortfeasor by the trier of fact.

In his opinion of June 20, 1991, the learned District Court in *Temple,* relying on *Hunt v. Ellisor & Tanner, Inc.,* 739 S.W.2d 933 (Tex.App.-Dallas 1987, writ den'd) refused to apply *Duncan,* a tort case involving strict liability.

In *Hunt,* W.H. Hunt and A.P. Stephens sued Ellisor & Tanner, in their capacity as contractual architects, and the contractor, on separate theories of breach of contract with respect to a building project. All parties except Ellisor & Tanner settled prior to trial. The jury found that Ellisor & Tanner had breached its contractual duty to adequately inspect the progress of the work. The jury also found that the general contractor was 95% at fault for the diminution in value of the building and that Ellisor & Tanner was 5% at fault. It made an award in conjunction with that finding. Hunt and Stephens appealed the trial court's submission of comparative breach of contract theories to the jury, relying in part on *Duncan.*

The Court in *Hunt* rejected the application of *Duncan,* citing language in *Duncan* which referred to a comment to the Uniform Comparative Fault Act, at § 1 et seq., 12 U.L.A. 38

(Supp.1986). It said, "An action for breach of warranty is held to sound sometimes in tort and sometimes in contract. There is no intent to include in the coverage of the Act actions that are fully contractual in their gravamen and in which the plaintiff is suing solely because he did not recover what he contracted to receive."

This Court agrees that *Duncan* does not apply to the facts at hand and that the one satisfaction rule in *Bradshaw* does apply. The one satisfaction rule is based on the notion that allowing a double recovery is ordinarily against public policy. *Marcus, Stowell & Beye v. Jefferson Investment Corporation,* 797 F.2d 227 (5th Cir.1986).

In *Bradshaw,* the plaintiff sued the International & Great Northern Railroad Company and Baylor University when a bus he was riding, owned by Baylor, collided with a train owned by the railroad company. Bradshaw set tled his claim with the railroad company for $6500 and partially assigned his rights to it. The railroad company then proceeded against Baylor. At trial, the jury found "... That $6500, if paid presently, would compensate Wesley Bradshaw for the injuries received by him upon the occasion in question." On appeal, the Texas Supreme Court focused on Bradshaw as the plaintiff with no assignment having been made. It found that Bradshaw could take nothing since he had already been adequately compensated through the settlement agreement.

The Texas Supreme Court wrote, "It is a rule of general acceptance that an injured party is entitled to but one satisfaction for the injuries sustained by him. That rule is in no sense modified by the circumstance that more than one wrongdoer contributed to bring about his injuries. There being but one injury, there can, in justice, be but one satisfaction for that injury. The fact that the money was paid to him in consideration for his covenant not to sue the railroad company and for his partial assignment to the company renders it none the less a payment as compensation for his injuries."

When the District Court in *Temple* found that Groos Bank and Commercial Bank were entitled to Judgment as a Matter of Law, it relied on the uncontroverted evidence presented when they responded to Temple's motion for summary judgment. The evidence established that Temple had received $300,000 from EVLICO to settle his claim arising from the alleged damages he sustained as a result of Elolf's actions. The evidence also showed that Temple received $10,000 from

Elolf for interest Temple would have received if the $250,000 had been invested as directed. Temple's only response, that the one recovery doctrine was inapplicable, was unpersuasive.

Temple testified in his depositions that after some correspondence he received two amounts from EVLICO, one for $250,000 and one for $50,000. He thereafter executed a Release. Significantly, Temple admitted in his deposition that part of the basis of the Release stemmed from his payment of $250,000 by check to EVLICO delivered to Elolf.

Temple never received his $250,000 insurance policy. He did, however, receive that amount from EVLICO as reimbursement for Elolf's failure to procure the insurance policy. As stated earlier, he also received $10,000 from Elolf, the amount of interest he would have been owed had the policy been in effect. In addition, Temple received another $50,000 from EVLICO.

The one satisfaction rule enunciated in *Bradshaw* is applicable to the situation now before the Court. Temple has more than adequately been compensated for any loss he may have sustained. He cannot now use his circumstance as a mechanism to recover an even greater award, one that he is not owed.

We agree with the well reasoned analysis in the District Court's opinions of May 17, 1990, and June 20, 1991, which find for the defendants.

AFFIRMED.