NUMBER
13-00-647-CV

 

                             COURT
OF APPEALS

 

                   THIRTEENTH
DISTRICT OF TEXAS

 

                                CORPUS
CHRISTI

___________________________________________________________________

 

lLABEN M. PATEL, INDIVIDUALLY, 

MANILA CORPORATION, AND 

DAS INVESTMENTS
CORPORATION,                                    Appellants,

 

                                                   v.

 

ANTHONY RICHARD KUCIEMBA AND 

DOROTHY KUCIEMBA,                                                         Appellees.

___________________________________________________________________

 

       On
appeal from the Probate Court No. 4 of Harris
County, Texas.

__________________________________________________________________

 

                                   O
P I N I O N

 

                    Before
Justices Hinojosa, Castillo, and Amidei[1]

                                  Opinion
by Justice Amidei



 








This is an appeal from an adverse jury verdict and judgment in
a cause of action by appellees Anthony Richard Kuciemba A(Tony)@ and Dorothy Kuciemba A(Dorothy)@ against
appellant Ilaben M. Patel A(Ilaben)@, individually
on four promissory notes, and against appellants Manila Corporation A(Manila)@ and DAS
Investment Corporation (DAS) for fraudulent transfer of real estate.

Ilaben, as
Independent Executrix of the Estate of Manubhai G.
Patel A(Manu)@, deceased, Kailash Patel, Manu Enterprises, Inc. and HMI Enterprises,
Inc., defendants in the trial court did not appeal. 

The jury found in favor of appellees
on all questions. Ilaben only contests the findings
in questions 6 and 7 which found Manu had apparent authority to sign the notes
as Ilaben's agent, and that Ilaben
ratified Manu's execution of the notes. Manila and DAS contest question 10
which finds DAS made a fraudulent transfer to Manila. Ilaben
also claims the trial court erred in admitting an alleged Dunn & Bradstreet
report which was inflammatory and prejudicial. 

                                                Standard
of Review 








No evidence points of error must and may only be sustained when
the record discloses: (1) a complete absence of evidence of a vital fact; (2)
the court is barred by rules of law or of evidence from giving weight to the
only evidence offered to prove a vital fact; (3) the evidence offered to prove
a vital fact is no more than a mere scintilla; and (4) the evidence established
conclusively the opposite of the vital fact. 
Juliette Fowler Homes, Inc. v. Welch
Assocs., 793 S.W.2d 660, 666, n. 9 (Tex. 1990). 

Error may not be predicated upon a ruling which admits or
excludes evidence unless a substantial right of the party is affected, and in
case the ruling is one admitting evidence, a timely objection or motion to
strike appears of record, stating the specific ground of objection, if the
specific ground was not apparent from the context.  Tex.
R. Evid. 103(a)(1).  Where it is
proven that publications of market prices or statistical compilations are
generally recognized as reliable and regularly used in a trade or specialized
activity by persons so engaged, such publications are admissible for the truth
of the matter published.  Tex. R. Evid. 803(17); Curran v. Unis, 711 S.W.2d 290, 296-97 (Tex. App.BDallas 1986, no
writ).

                                                Factual
Background 

Manu owned and operated five convenience stores until March,
1997 when he was killed.  In the
beginning Manu leased a convenience store at 13745 Chrisman Road, Houston,
Texas, for about five years until September 1990 when the owners, Tony and Emrik Nowak sold the store to DAS. DAS is a corporation
owned by a general partnership consisting of Ilaben
and Kailash Patel, the general partners.  The purchase price balance was evidenced by a
note and secured by a deed of trust lien executed by DAS.  The payments were made on the deed of trust
note until Manu's 








death.  The deed of trust was posted for foreclosure.
Prior to the foreclosure, DAS conveyed the real estate to Manila by a deed
wherein Manila agreed to assume the existing deed of trust lien indebtedness.  However, the real estate note was paid in
full by DAS prior to a foreclosure sale. 
DAS paid Tony and Emrik Nowak the purchase
money from Manila for their release of the deed of trust lien.

In addition to the real estate note discussed above there were
four promissory notes signed and executed by Manu on the dates and for the
amounts as follows: 

1. Note #1:
October 1, 1990              $35,000      Plaintiffs' Exhibit #1

2. Note #2:
November 15, 1992         60,000        Plaintiffs' Exhibit #3 

3. Note #3:
April 19, 1994                 20,000        Plaintiffs'
Exhibit #4

4. Note #4:[2]
September 1, 1996         50,000       Plaintiffs' Exhibit #7








Manu and Ilaben were married at all
relevant times but Ilaben did not sign any of the
notes and did not have any knowledge that Manu had signed the notes.  Tony agreed that Manu only pay interest on
the notes.  The interest on the notes was
12 percent.  By agreement the interest
payments on the notes were consolidated so that Manu made only one interest
payment each month in the amount of $1,650 on all four notes until his death in
March 1997.  Ilaben
continued the $1,650 monthly payments until December 1997.  At that time, Ilaben
denied the debts and wanted proof of their validity. Appellees
filed suit on the notes and sought to null and void the deed from DAS to Manila
on the grounds it was a fraudulent transfer. 

                                                  Issues
Presented 

Ilaben contends in
issue number one that the trial court erred in entering judgment against her
because there was neither legally nor factually sufficient evidence to support
the jury findings of apparent authority and ratification.

Ilaben objected to
the charge on the ground there was legally and factually insufficient evidence
of apparent authority and ratification to support jury questions numbers 6 and
7, and repeated such objections in her motion for new trial.

The conclusions and arguments by appellees
as to evidence to support the jury findings that Manu had apparent authority to
sign the notes as agent for Ilaben and our response
thereto are as follows:








1. The fact that Manu and Ilaben were
married.  We disagree.  As a matter of law, this cannot be evidence of
apparent authority because a spouse does not act as an agent for the other
spouse solely because of the marriage relationship.  See Nelson v. Citizens Bank & Trust,
881 S.W.2d 128, 131 (Tex. App.BHouston [1st
Dist.] 1994, no writ); Carr v. Houston Bus. Forms, Inc., 794 S.W.2d 849,
852 (Tex. App.BHouston [14th
Dist.] 1990, no writ).  At the time the
four notes were made, appellees were charged with
knowledge that the marital relationship alone is insufficient evidence that a
spouse acts as agent for the other spouse because section 4.031(c) [now section
3.201(c)] of the Texas Family Code specifically provided that a spouse does not
act as an agent for the other spouse solely because of the marriage
relationship.  Tex. Fam. Code Ann. ' 3.201(c).  The case Crockerham
v. Crockerham, 527 S.W.2d 162 (Tex. 1975), cited
by appellees to support the findings of agency and
ratification, is distinguishable because in that case the husband and wife were
both clearly active in the wife's dress shop, whereas in this case Ilaben did not have an actual involvement in Manu's
businesses other than operating two of the convenience stores which did not
include decisions or knowledge of Manu's business borrowing.  Also, Crockerham
was decided prior to the enactment of section 4.031(a) [now section
3.201(a)(1)] of the Texas Family Code which provided as follows: 

(a) A person is personally liable for the acts of the person's
spouse only if: 

(1) the spouse acts as the agent for the person;.... 

Tex. Fam. Code Ann. ' 3.201(a)(1).  

Other cases have distinguished Crockerham
in a similar fashion before and after section 4.031(a) was enacted in 1987; Nelson,
881 S.W.2d at 131; Pope Photo Records, Inc. v. Malone, 539 S.W.2d 224,
227 (Tex. Civ. App.BAmarillo 1976, no writ).








2. The two checks on the Patels'
joint account used to secure two of the notes. We disagree. The checks were
signed by Manu but were not signed by Ilaben; the
checks were never cashed; and there was no proof that Ilaben
had any knowledge of the checks. Apparent authority in Texas is based on estoppel.  Ames v.
Great S. Bank, 672 S.W.2d 447, 450 (Tex. 1984). AIt may arise
either from a principal knowingly permitting an agent to hold himself out as
having authority or by a principal's actions which lack such ordinary care as
to clothe an agent with the indicia of authority, thus leading a reasonably
prudent person to believe that the agent has the authority he purports to
exercise.@  Id. AA prerequisite to a proper finding of
apparent authority is evidence of conduct by the principal relied upon by the
party asserting the estoppel defense which would lead
a reasonably prudent person to believe an agent had authority to so act.@  Id. 
There was no evidence that Ilaben
intentionally and knowingly permitted Manu to use the two checks as he did, or
by any want of due care by Ilaben which led Tony to
believe Manu had authority to sign the checks as her agent.  A reasonably prudent person would not have
believed Manu had authority to act as Ilaben's agent
as claimed merely because checks with both Manu's and Ilaben's
names were printed thereon when Ilaben had not signed
the checks.  Manu's conduct in using the checks
as he did is not evidence of apparent authority to act as Ilaben's
agent.  AA court may consider only the conduct of
the principal leading a third party to believe the agent has authority in
determining whether an agent has apparent authority.@  Sociedad
De Solaridad Social El Estillero
v. J. S. McManus Produce Co., 964 S.W.2d 332, 334 (Tex. App.BCorpus Christi
1998, no pet.).  The two checks cannot be
evidence to support jury question number six regarding apparent authority.








3. Ilaben was involved in all of
Manu's stores throughout the years.  We
disagree. There is no evidence to support this conclusion.  The evidence showed Ilaben
only operated two stores, the Wallisville and W.
Hardy locations; that she only performed such duties as cashing checks,
accounting, accounts receivable and accounts payable; and that she did not
discuss or even know of decisions Manu made on investments, borrowing money or
running the business.  There was no
evidence that Ilaben "allowed" Manu to make
such decisions but she lived with and stood by his decisions.  Ilaben never
participated in making loans for money to run the two stores where she worked,
although some of the money from the loans in question was used at those
stores.  Merely operating the two stores
as she did could not have led a reasonably prudent person to believe that Manu
had apparent authority to sign the notes in question as Ilaben's
agent.  Even if Ilaben
knew of the loans Manu made, one would not infer that she consented to the
loans.  See Spruill v. Spruill,
624 S.W.2d 694, 698 (Tex. App.BDallas 1981,
writ dism'd w.o.j.).

Community property over which a spouse has the sole management,
control and disposition is known as special community property.  Moss v. Gibbs, 370 S.W.2d 452, 455
(Tex. 1963).  Special community property
is that portion of the community that is under one spouse's exclusive control
and is not liable for the other spouse's debts. 
Id.; see also 39 Tex.
Jur. 3d Family Law ' 190
(1994).  Manu had the sole management,
control and disposition of the convenience store business and it was his
special community property. 








4. The statement by Manu to Tony not to worry about the money
he loaned to Manu because if anything happened to him, then Ilaben
would repay all of the loans with his life insurance proceeds.  We disagree. 
The statement was made by Manu, not Ilaben,
and cannot be evidence of apparent authority of Manu to sign the notes in
question as Ilaben's agent.  See Ames, 672 S.W.2d at 450.  Even if Manu made the statement, he could not
bind Ilaben because any insurance proceeds the wife
receives at her husband's death are her separate property not subject to her
husband's debts unless the proceeds have been assigned as collateral security therefor.  Pope
Photo Records, 539 S.W.2d at 226. 
There is nothing in the record showing that the proceeds of a life
insurance policy on Manu's life was assigned either as collateral security of
the note in question, or otherwise assigned to the appellees.  To the contrary, Tony believed Ilaben would first receive the insurance proceeds from the
insurance company, and then pay him out of the proceeds.  No mention was made of an assignment. 








5. Appellees' allegation that Ilaben stop paying interest on the notes when Tony retained
an attorney, and then admitted to Mr. Nowak she owed the Kuciembas
the money when she stated that she did not have the money now but would pay
later.  We disagree.  The evidence shows that Ilaben
did not admit owing the money.  Ilaben did not tell Mr. Nowak she owed the money but
instead she told him she was not going to pay Tony until after they went to
court and Tony proved the debts.  In
effect, Ilaben's statements were a denial of the
debts rather than an admission of their validity.  In any event, Ilaben's
statements made subsequent to the execution of the notes cannot be evidence of
apparent authority in Manu to act for Ilaben.  Appellees had the
burden to prove Tony relied upon Ilaben's conduct
when he made the loans.  Ames, 672
S.W.2d at 450.  These alleged statements
by Ilaben were made years after the notes were made
and it would not have been possible for Tony to rely on them. 

6. The Kuciembas believed Manu had
the authority to bind Ilaben.  We disagree. 
Since Ilaben did nothing to lead Tony to
believe Manu had authority to sign the note as her agent, the Kuciembas' beliefs are not evidence of apparent
authority.  Id.  Further, appellees
cite no authority to support this conclusion. 

The conclusions and arguments made by appellees
as to evidence they claim support the jury finding that Ilaben
ratified the notes and our response thereto are as follows :

7. Ilaben allegedly
"allowed" her husband to control all of the family finances and
business finances.  We disagree.  As discussed in paragraph number three above,
Ilaben did not allow her husband to control the
finances, and the control her husband exercised was not pursuant to their
agreement.  Manu made the financial
decisions without her knowledge or consent. 
Unless there is evidence of full knowledge by the principal of the
agent's unauthorized act, or alternatively, unless there is full evidence of
facts from which such knowledge can reasonably be imputed to the principal, the
evidence as to ratification is insufficient. 
Wyatt v. McGregor, 855 S.W.2d 5, 13 (Tex. App.BCorpus Christi
1993, writ denied).  As discussed in
above paragraph number one the debt of Manu is not imputed to Ilaben.  There is no
evidence of facts from which full knowledge of the notes could be imputed to Ilaben because of the extent of control Manu exercised over
the family and business finances. 








8. Two of the loans were secured by personal checks on Ilaben's joint personal account.  We disagree. 
Inasmuch as Ilaben had no knowledge of these
checks, they cannot be evidence of ratification.  Id. 

9. Ilaben allegedly stated that she
was not paying the Kuciembas because they retained
attorneys, while not denying she owed the money.  We disagree. 
As discussed in above paragraph number 5, Ilaben
in effect denied the notes, but the fact she ceased paying because the Kuciembas retained attorneys is not evidence of
ratification.  Ilaben
desired that the Kuciembas' claim be proven in court,
but her statements did not indicate she had full knowledge of the notes.  Appellees did not
meet their burden to prove Ilaben had full knowledge
of all material facts at the time she stopped paying, and stated she wanted the
Kuciembas' claim to be proven in court.  Jackson v. Gray, 558 S.W.2d 138, 139
(Tex. Civ. App.BTyler 1977,
writ ref'd n.r.e.).

10. Mr. Nowak, another individual who loaned the Patels money, understood that Mrs. Ilaben
owed the Kuciembas the money.  We disagree. 
The money Mr. Nowak understood Ilaben owed was
on the Chrisman property note which had been paid.  In any event, whatever Mr. Nowak
"understood" about a paid note on which he was a joint payee is not
relevant to whether Ilaben ratified the notes in
question. 








11. Ilaben allegedly admitted to Mr.
Nowak that she owed the Kuciembas.  We disagree. 
As discussed in above paragraph number 5, Ilaben
did not admit she owed the note in question. 
Ilaben's statements to Mr
Nowak as cited by appellees do not constitute
evidence of apparent authority or ratification. 

12. Tony demanded payment of the principal for all four notes
from Ilaben so she knew what she was ratifying by
paying the interest.  We disagree.  During the time interest payments were made
after Manu's death, appellees did not prove Ilaben had full knowledge of all the material facts
concerning the four loans, and the checks paying the interest were from Manu
Enterprises, a corporation which is a part of Manu's estate, and Manu=s estate.  Ilaben was
independent executrix of Manu's estate and properly could make payments for the
estate, but she was not personally linked to the four notes by the payments of
interest.  Frazier v. Wynn, 472
S.W.2d 750, 753 (Tex. 1971).  The cash
payments were made to Tony when he would show up at a store where Ilaben was working until she told him to stop.  The source of the cash which was paid was not
proven. 








13. Ilaben retained the benefits of
the loans through the inventory and equipment the money purchased as well as
the continued recycling of the money for her check cashing business (an implied
ratification).  We disagree.  Appellees did not
prove any remaining benefits such as inventory, equipment, and money for
cashing checks from the loans in question. 
Manu used the borrowed money for a number of years before he died.  The bookkeeper testified the name Kuciemba did not appear in the Patel records.  Even if there were benefits from the loans
when made, there was nothing to give Ilaben notice
she was retaining any benefits from the loans, or that she had full knowledge
of all the material facts.  Id.  Before she could be held to have voluntarily
assented to the loans, the Kuciembas were required to
prove Ilaben knew the terms of the notes.  Taylor v. Gilbert Gertner
Enters, 466 S.W. 2d 337, 340 (Tex. Civ. App.BHouston [1st
Dist.] 1971, writ ref=d n.r.e.). 

The trial court erred in submitting jury questions 6 and 7, and
in rendering judgment against Ilaben, individually,
based on the jury=s answers
thereto because there was no evidence that Manu acted as Ilaben=s agent in
executing the promissory notes under apparent authority or that Ilaben ratified the promissory notes.  Juliette
Fowler Homes, Inc., 793 S.W.2d at 666, n. 9.  Ilaben=s issue number
one is granted.    DAS contends in issue number two that the trial court erred in
submitting the incorrect name of DAS Investments, a non-party to the suit, in
jury question number 10, instead of DAS Investment Corporation, the correct
party.  Although DAS argues that this
constituted fundamental error, it cites no authority to support its
argument.  Even assuming fundamental
error, it is unnecessary to rule on this issue because of our ruling on issue
number three that there was no fraudulent transfer and therefore we cannot
affirm a judgment against DAS or DAS Investments.  Issue number two is overruled.

DAS and Manila assert in issue number three that the evidence
is legally and factually insufficient to sustain a judgment against them and to
"null" and "void" the deed to Manila. 








Tony and Nowak held a deed of trust lien on the real estate
owned by DAS at 13745 Chrisman. Payments were made on this deed of trust note
until Manu's death.  The deed of trust
was posted for foreclosure. Prior to foreclosure DAS conveyed the real estate
to Manila by a deed wherein Manila agreed to assume the existing $60,000 deed
of trust indebtedness.  However, the deed
of trust note was paid in full by DAS prior to a foreclosure sale.  DAS paid Tony and Nowak the purchase money
from Manila to pay the balance on the deed of trust note and received from them
a release of the deed of trust note and lien. 
Appellees claim the transfer was fraudulent
because the property was sold well below the market value of the property with
a substantial gain to Manila, an insider.








The judgment of the trial court orders the transfer null and
void as to plaintiffs but did not award them any amount of money for the value
of the asset transferred or the amount necessary to satisfy their claim, which
in this case was the same. If the transfer was voidable
the trial court could have only rendered judgment against Manila or DAS for the
amount of the claim, to-wit: $60,000, notwithstanding the value of the property
may have been greater than $60,000 as claimed by appellees.  To the extent a transfer is voidable in an action by a creditor, the creditor may
recover judgment for the value of the asset transferred or the amount necessary
to satisfy the creditor's claim, whichever is less.  Tex.
Bus. & Com. Code Ann. ' 24.009(b)
(Vernon Supp. 2002); Jackson Law Office, P.C. v. Chappell, 37 S.W.3d 15,
27 (Tex. App.BTyler 2000,
pet. denied).  However, since the $60,000
was paid simultaneously with the transfer and with the consent of the
creditors, the appellees, their claim was satisfied,
and the transfer was not fraudulent. 

In seeking the equitable remedy offered by the Uniform
Fraudulent Transfer Act, appellees were required to
come into court with clean hands as equity will compel fair dealing, disregard
all forms and subterfuges, and look only to the substance of things.  Chappell, 37 S.W.3d at 27.  DAS and Manila need not show they suffered
injury in order for the court to apply the doctrine of unclean hands to deny appellees equitable relief. 
Id.  Appellees'
fraudulent transfer claim in effect is groundless because the debtor's debt had
been paid in full and released.  While
DAS and Manila have not proved any specific injury, they have incurred the time
and expense of litigation, and the title to the real estate at 13745 Chrisman
has been clouded by appellees= suit.  We apply the unclean hands doctrine to deny
equitable relief to appellees. 

DAS's and Manila's issue number three is granted. 

Ilaben's issue number
four complains that the trial court committed prejudicial error in admitting an
alleged Dunn and Bradstreet Report without proper predicate.  It appears Ilaben's
argument is correct because it has been held that a proper predicate must be
made before a Dunn & Bradstreet Report is admissible as an exception to the
hearsay rule.  Curran, 711 S.W.2d
at 297.  The improper admission of this
report probably caused the rendition of an improper verdict because there was
no other evidence to support jury questions 6 and 7.  Tex.
R. App. P. 44.1(a)(1).

Ilaben's issue number
four is granted. 








The trial court judgment: (1) against Ilaben,
individually, is reversed and judgment is rendered that appellees
take nothing against Ilaben, individually; (2) the
judgment against DAS and Manila holding they made a fraudulent transfer is
reversed and judgment is rendered that said transfer from DAS to Manila is not
a fraudulent transfer; and (3) the judgment against the Estate of Manubhai G. Patel, and Manu Enterprises, Inc. is affirmed. 

 

______________________________

MAURICE
AMIDEI

Justice


Publish.

Tex.
R. App. P.
47.3.

 

Opinion delivered and
filed

this 23rd day of May,
2002.

 











[1]
Former
Justice Maurice Amidei assigned to this Court by this
Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov=t Code Ann. ' 74.003 (Vernon 1998).





[2] This
note was jointly signed by Manu Enterprises, Inc. and apparently the parties
attempted to place a lien on the real estate at 13745 Chrisman, as well as on
gasoline equipment, working cooler, shelving, counter etc II by a UCC-1
Financing Statement signed by Manu for Manu Enterprises, Inc. and the Kuciembas.  However,
the UCC-1 statement was undated and was not filed in the county clerk's office
and the Secretary of State's office until April 1999, and DAS owned the real
estate at 13745 Chrisman not Manu Enterprises, Inc.  It is not clear that the UCC-1 statement is
connected with Note #4 or any other note.